GIBBS et al. v. McNEELEY et al.

(Circuit Court, D. Washington, W. D.   March 15, 1901.)

ANTI-TRUST LAW—RESTRAINT OF INTERSTATE COMMERCE.
   A combination controlling not only the manufacture of an article in the state, but also the sale of the manufactured article, is not one in restraint of interstate commerce, so as to give a right of action against it, under the anti-trust law of July 2, 1890, to one injured by a resolution passed and circulated by it denouncing him for cutting prices, its sales being within the state, and any transportation and sale of the article in other states being by other agencies.

T. O. Abbott, for plaintiffs.
C. O. Bates, Chas A. Murray, and J. H. McDaniels, for defendants.

BELLINGER, District Judge.   This case is being tried on what is known as the "fourth cause of action."   In this cause of action it is alleged, in effect, as follows: That the defendants, with the intent to injure and destroy the plaintiff's business, and to bring plaintiff into public odium and discredit, and to provoke him to wrath, and to induce his patrons in the various states to withdraw their patronage from him, and to destroy his credit and business, did maliciously compose and declare a certain communication of and concerning plaintiff and his business, as follows: Said committee did adopt, and enter upon the records of the association, and did distribute and publish, certain resolutions, whereby it was falsely and maliciously alleged that plaintiff was endeavoring to injure the market for Washington red cedar shingles, and whereby it was further falsely and maliciously stated that plaintiff had no money invested in said business, and that he was without credit, and irresponsible, and was not an honorable and legitimate dealer in said shingles.   That, thereafter the said committee, by its officers, etc., with intent to induce all wholesale and retail dealers in the states and foreign countries named to refuse to buy shingles of plaintiff and do business with him, and to induce the manufacturers to refuse to sell shingles to plaintiff, did publish said resolutions by print

ing the same in circular form, and addressed the same to various wholesale and retail dealers throughout the state of Washington and other states, and to a large number of newspapers and trade journals in Washington and other states, etc. That by virtue of said conspiracy and of the advertising so done the defendants did bring the plaintiff into odium and discredit with said manufacturers, so that they refused to sell him Washington red cedar shingles, and did also bring him into odium and discredit with a large number of his patrons and clients, so that they refused to buy shingles of him, and did totally destroy plaintiff's business.

In the case of U. S. v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, the supreme court held that, although the American Sugar-Refining Company had obtained a practical monopoly of the business of manufacturing sugar, yet the act of congress did not touch the case, because the combination only related to manufacture, and not to commerce among the states or foreign countries; that a combination which directly related to manufacture only was not brought within the purview of the act, although, as an indirect and incidental result of such combination, commerce among the states might be thereafter somewhat affected. The court in that case says:

"The fact that an article is manufactured for export to another state does not of itself make it an article of interstate commerce, and the intent of the manufacturer does not determine the time when the article or product passes from the control of the state and belongs to commerce."

In the more recent case of Addyston Pipe & Steel Co. v. U. S., 175 U. S. 239, 20 Sup. Ct. 96, 44 L. Ed. 136, the principle was recognized that a combination to control manufacture is not a violation of the act of congress, since such a combination does not directly control or affect interstate commerce. The court distinguishes such a combination from one having for its object the sale and transportation to other states of specific articles. Combinations of the latter class are held to be proper subjects for regulation, because they enter into such commerce. To which class does the case on trial belong? Plaintiff contends that, inasmuch as the combination under consideration controls not only the manufacture, but the sale, of the manufactured product, this case belongs in the latter class; that defendants' combination affects interstate commerce, and is therefore made unlawful by the act of congress. The reason why the manufacture within a state of an article of commerce is not within the purview of the act, although the manufacturing combination constitutes a monopoly, being that it involves nothing in the way of interstate commerce, does it alter the case that the combination includes the sale of its product among its objects? I am of the opinion that it does not; that the lawfulness of what is done depends upon the place directly affected, and not upon the character in other respects of what is done. It makes no difference that the manufacturer intends his product for sale in other states and foreign countries. Such an intention does not alter the character of the combination to manufacture, and upon this principle it makes no difference that the contract or combination is for the manufacture and sale of

specific articles. It must go further, and provide for the sale and transportation to other states of the specific articles; otherwise, what is proposed cannot be said to look to interstate commerce. Mere state commerce is a matter of state control. In this case the action of the defendants in providing for the sale of their product is without reference to interstate commerce. The defendants manufacture and sell within the state, with the intention that the product sold shall all be used within the state, or transported and sold out of it, as the purchaser shall decide. The sale and the manufacture cannot be distinguished, so far as the question of state control is concerned; both take place within the state; both are equally within its police power; both affect interstate commerce in the secondary sense merely; neither affects it in the primary sense. If the shingles manufactured are transported and sold in other states, it is done by other agencies and combinations not responsible to the Washington Red Cedar Shingle Manufacturers' Association, and not provided for by their contract of association. If the plaintiff has suffered injury by reason of the alleged combination, it is within the province of his state to provide him a remedy. This court is without jurisdiction in the premises.

The learned judge of this district, in passing upon the demurrer filed in this case (102 Fed. 594), expresses the opinion that the plaintiff is entitled to recover upon the fourth cause of action set out in the complaint. The proof submitted, however, does not sustain this cause of action. The only charge affecting the plaintiff made out by the evidence is that he is a rate cutter. All else contained in the circular complained of is merely inference, more or less doubtful, drawn from the alleged fact that plaintiff was engaged in cutting rates. It is stated in the circular that the plaintiff was endeavoring to injure the market for Washington red cedar shingles, but it is plainly enough stated that he is endeavoring to do this by cutting rates. It is stated that he has no money invested in the business, and his own testimony is to that effect. But, whether true or false, it does not affect his business integrity or capacity. The circular announces the purpose of those issuing it to deal with responsible, honorable, and legitimate dealers; and, having announced a purpose not to deal with the plaintiff, this statement is construed to mean that the plaintiff is an irresponsible and dishonorable dealer, whose methods are not legitimate. But the only inference admissible as to this is the inference that the authors of the circular intend to have nothing to do with rate cutters, because they regard the practice of rate cutting as an illegitimate and dishonest practice; an opinion based upon a fact stated, and not injurious unless the fact to which it is related is of that character. The plaintiff, with many years' experience in the shingle business, is presumed to know whether the charge of rate cutting involves the integrity of those against whom it is made, and it appears that some years ago he advertised himself to his customers in a circular issued in behalf of a firm to which he belonged as a rate cutter, and sought to attract business by the announcement. I am of the opinion that a verdict based upon such testimony ought not to stand,

and, if so, a verdict for the defendants should be directed. But with the utmost respect for the opinion of the learned judge just referred to, I am convinced that the allegations in the fourth cause of action are not sufficient. The allegations are of a libel, and the damages alleged do not result from any combination, or conspiracy, or monopoly denounced by the act of July 2, 1890. No such combination or conspiracy or monopoly is shown. And, if the parties to the circular in question can be said to have conspired to libel the plaintiff and injure his business, their conduct was not in restraint of trade, and within the mischief intended to be prevented by the act of congress.