ROBINSON v. SUBURBAN BRICK CO.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1904.)

No. 455.

1. FEDERAL COURTS—JURISDICTION—ALLEGATION OF AMOUNT IN CONTROVERSY.
   It is not essential that a bill in a federal court should state the amount
   or value in controversy, if it appears to be within the jurisdictional limit,
   from the allegations of the bill, or otherwise from the record, or from evi-
   dence taken in the case before the hearing of objections to the jurisdiction.

2. CONTRACTS IN PARTIAL RESTRAINT OF TRADE—VALIDITY—SALE OF GOOD
   WILL.
   A covenant in a contract by which the owners of brickmaking plants
   conveyed them to a corporation in exchange for its stock, binding the sell-
   ers not to engage in competing business within a radius of 50 miles from
   the place of business of the corporation for a term of 10 years, is valid,
   and may be enforced in a court of equity by a suit to enjoin its violation.

3. SAME—LAW GOVERNING.
   ⸱ Such a covenant is personal, and is not brought within the statutes of a
   state other than that in which the contract was made by the fact that the
   property sold was situated in such state.

4. MONOPOLIES—ANTI-TRUST ACT—MANUFACTURING COMBINATION.
   The anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St.
   1901, p. 3200]), does not apply to a contract or combination relating to the
   business of manufacturing within a state.

5. ABATEMENT—PENDENCY OF ACTION IN STATE COURT.
   The pendency of a suit in a state court is not a bar to one on the same
   cause of action in a federal court.

Appeal from the Circuit Court of the United States for the Northern
District of West Virginia, at Wheeling.

Henry M. Russell and J. B. Driggs, for appellant.
Nelson C. Hubbard (Hubbard & Hubbard, on briefs), for appellee.

Before GOFF and SIMONTON, Circuit Judges, and McDOWELL,
District Judge.

SIMONTON, Circuit Judge. This case comes up on appeal from
the Circuit Court of the United States for the Northern District of
West Virginia. It has been twice argued in this court. In the year
1898 George O. Robinson, the appellant here, was engaged in the busi-
ness of manufacturing brick in the town of Bellaire, in the state of
Ohio. At the same time George K. Wheat was engaged in the same
business in or near the city of Wheeling, W. Va. The Belmont Brick
& Tile Company had a manufactory at Martin's Ferry, in the state of
Ohio. B. F. Hodgman was conducting the manufacture of brick at

¶ 1. Jurisdiction of Circuit Courts as determined by amount in controversy,
see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v.
Roper, 36 C. C. A. 459.

¶ 2. Validity of monopolistic contracts, as affected by public policy, see notes
to Chicago, M. & St. P. Ry. Co. v. Wabash, St. L. & P. Ry. Co., 9 C. C. A. 666;
Cravens v. Carter-Crume Co., 34 C. C. A. 486.

¶ 5. See Abatement and Revival, vol. 1, Cent. Dig. § 87.

Moundsville, W. Va. The owners of these factories entered into an agreement on 24th December, 1898, whereby they all agreed to sell, and convey their several plants to a corporation to be organized under the laws of West Virginia, which would have its principal place of business at Wheeling. They were each to receive, in payment for the plant, specified amounts of stock in the new company. The agreement contained the following stipulation:

"It is mutually agreed between the parties hereto, and each for himself specifically promises and agrees, not to hereafter engage in the brickmaking business, or in any lines that may be manufactured hereafter at any of the several plants to be operated by the corporation whose creation is here contemplated, or to furnish means, aid or advice to others seeking to do so in such a way as to come in competition with the said corporation within a territory which may be described as within a radius of 50 miles from the City of Wheeling, W. Va., within a period of ten years from and after the signing of this agreement."

The agreement was carried out, and the property exchanged for the stock in the new company called the Suburban Brick Company. George O. Robinson took an active part in the management and control of the new company for some time. He afterwards sold out all his interest, and then ceased to have anything to do in the business of the company. Very soon thereafter he became a stockholder in the Standard Brick & Stone Company, a corporation organized under the laws of Ohio, and engaged in manufacturing brick substantially the same as that of the Suburban Brick Company, at Bellaire, Ohio, within 10 miles of Wheeling.

The bill in this case is filed by the Suburban Brick Company against George O. Robinson in order to compel the specific performance of his contract as above set forth. It states the facts above set out, and prays that the defendant, George O. Robinson, be enjoined from prosecuting the business of brickmaking as manager or adviser of the Standard Brick & Stone Company, or of any others who may seek to engage in business within the said territory.

The answer did not deny the execution of the agreement set out in the bill, nor the violation of it by the defendant. It justified the breach of the agreement; insisting that it was unlawful and invalid under the laws of the state of Ohio, under the trust laws of the United States, at common law, and against the principles of equity. The answer also set up the pendency of a suit between the same parties in a court of Ohio, involving the same question as is involved in this case.

With this answer the defendant also filed a demurrer:

"(1) The said bill is defective, in that it does not allege facts showing that this court has jurisdiction of this cause, nor are such facts otherwise shown by the record. (2) The agreement set forth in the said bill is void, by reason of the laws of the state of Ohio, and also by reason of the acts of Congress of the United States; and, except by virtue of the said agreement, the plaintiff shows no right to relief. (3) The facts stated in the bill do not present a case in which a court of equity has jurisdiction, even if the agreement were valid, to award an injunction or to grant the relief prayed for. (4) The said bill is in other respects uncertain, informal, and erroneous."

At the hearing, all the evidence having been taken and submitted, the court below overruled the demurrer. The second, third, and fourth grounds of demurrer are clearly superseded by the answer. The first

ground of demurrer, based upon the failure of complainant to state in so many words that the matter in controversy exceeded $2,000, besides interest and costs, was overruled; the court holding that it may be determined from the evidence herein that the amount in controversy exceeds the required jurisdictional amount. The decree, on bill, answer, and evidence, granted complainant the relief asked, and ordered the injunction to issue, to remain in force until .24th December, 1908, the date fixed by the agreement in the record.

Leave to appeal was granted the defendant, and the case is here on assignments of error as follows:

"(1) The said decree is erroneous in overruling and refusing to sustain the defendant's demurrer to the bill in the said suit. (2) The said decree is erroneous in awarding the injunction against the said defendant which is thereby awarded and decreed. (3) The said decree is erroneous in granting the plaintiff the relief prayed for, instead of refusing such relief and dismissing the plaintiff's bill."

As to the demurrer: It is not essentially necessary that the bill should state the amount of the matter in controversy, if this fact is either manifest from the allegations of the bill, or it be made to appear in any part of the record. The courts go farther than this, and permit this jurisdictional fact to be established by affidavits, if it appears in no part of the record. Carr v. Fife, 156 U. S. 494, 15 Sup. Ct. 427, 39 L. Ed. 508; United States v. Trans-Missouri Freight Association, 166 U. S. 311, 17 Sup. Ct. 540, 41 L. Ed. 1007; Whiteside v. Haselton, 110 U. S. 296, 4 Sup. Ct. 1, 28 L. Ed. 152; Wilson v. Blair, 119 U. S. 387, 7 Sup. Ct. 230, 30 L. Ed. 441; Red River Cattle Co. v. Needham, 137 U. S. 632, 11 Sup. Ct. 208, 34 L. Ed. 799. And in Rector v. Lipscomb, 141 U. S. 557, 12 Sup. Ct. 83, 35 L. Ed. 857, the court, notwithstanding allegations in the record, went into the testimony, and, under all the showing presented, held that the matter in controversy was not within the jurisdictional limit. In the case at bar the testimony showed that the threatened damage from the act of the defendant amounted to many thousands of dollars.

As to the merits: It is charged that this contract sought to be enforced is in restraint of trade and void. Contracts of this character, whereby a party binds himself not to carry on a particular business within a limited territory and for a limited time, have always been sustained by courts, especially if the contract accompanies, as a part of the consideration thereof, a sale by a vendor to a vendee. The rule is clearly stated by Mr. Pomeroy in his Equity Jurisprudence (volume 2, 443, 444):

"Contracts in partial restraint of trade are valid. To this end, they must be partial with respect to the territory included; reasonable with respect to the amount of territory, the circumstances and rights of the party burdened, and the one benefited by the restriction, and the number and interests of the public whose freedom of trade is circumscribed; and made upon a valuable and sufficient consideration. The jurisdiction of equity is generally exercised, in respect to these contracts, for the purpose of indirectly compelling their specific performance, by means of an injunction preventing their violation. Such contracts are frequently made in connection with a sale of a business and good will; the vendor stipulating that he will not carry on the same business within a specified distance from the old place, or for a specified time, or will not solicit the old customers for their trade, and the like. These kind of stipulations,

if reasonable as to territory and time, will be enforced against the vendor, often by an injunction."

This seems to be the law of Ohio. "Restraint of trade, founded on good consideration, reasonable, and not oppressive, is valid." Lange v. Werk, 2 Ohio St. 519; Grasselli v. Lowden, 11 Ohio St. 349. "A restriction as to one city for five years is valid." Thomas v. Miles' Adm'r, 3 Ohio St. 274. So in North Carolina. Kramer v. Old, 25 S. E. 813, 34 L. R. A. 389, 56 Am. St. Rep. 650: "Good will is property which the owner has the right to sell to the full extent of the field from which he derives his profit, and for a reasonable time. Its market value is lessened if he cannot bind himself not to compete. The space limit may be enough to secure to the buyer the full benefit of the business he has bought." In the Federal courts the same principle prevails. Oregon S. Nav. Co. v. Winsor, 20 Wall. 69, 22 L. Ed. 315: "Restraint is invalid at common law, except when it is ancillary to a lawful contract, involving relations of vendor and vendee, and necessary to protect the convenantee in the lawful fruits of his contract." U. S. v. Addyston Pipe Line Co., 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122; Hitchcock v. Anthony, 83 Fed. 779, 28 C. C. A. 80.

It is suggested that this contract is invalid under the laws of Ohio, especially as it involves the purchase of land in Ohio. But the question we are considering is not the validity or invalidity of the purchase of defendant's land. He nowhere seeks a rescission of that sale. Nor has he offered to return the consideration received by him on its purchase. On the contrary, he retains it. The question before us is a personal covenant by defendant with complainant, made in West Virginia, to be construed and enforced according to the law of West Virginia. There is no question of its validity under the law of West Virginia.

It is also urged that this transaction is void under the "act to protect trade and commerce against unlawful restraints and monopolies." Act July 2, 1890, c. 647, 26 Stat. p. 209 [U. S. Comp. St. 1901, p. 3200]. But this statute is intended to protect interstate trade and commerce, and does not relate to manufactories within a state. U. S. v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; illustrated in Addyston Pipe & Steel Co. v. U. S., 175 U. S. 237, 20 Sup. Ct. 96, 44 L. Ed. 136. The doctrine is well stated in Gibbs v. McNeeley, 107 Fed. 211:

"Manufacture within a state of an article of commerce is not within the purview of the act, although the manufacturing combination constitutes a monopoly. * * * It makes no difference that the manufacturer intends his product for sale in other states and foreign countries. * * * It must go further, and provide for the sale and transportation to other states; otherwise what is proposed cannot be said to look to interstate commerce."

The pendency of the suit in the court of Ohio cannot affect the suit in the Circuit Court of the United States. Gordon v. Gilfoil, 99 U. S. 168, 25 L. Ed. 383; Stanton v. Embry, 93 U. S. 548, 23 L. Ed. 983. See, also, Anderson v. U. S., 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300.

From a consideration of the whole case, we are satisfied with the conclusion reached by the court below. The decree is affirmed.