MERZ CAPSULE CO. v. UNITED STATES CAPSULE CO. et al.

(Circuit Court, W. D. Michigan. March 19, 1895.)

1. CORPORATIONS—RIGHT TO SUBSCRIBE FOR STOCK OF OTHER CORPORATIONS—ULTRA VIRES.

A corporation has, in general, no authority to subscribe for stock of another corporation, when the law governing the corporation in which the stock is taken is of a substantially different character, and fails to impose the liabilities and obligations imposed by the law of the subscribing corporation. *Held*, therefore, that a subscription made by a private business corporation organized under the laws of Michigan, for stock of a similar corporation organized under the laws of New Jersey, which subscription was to be paid for by a transfer of the entire property and business of the Michigan corporation, was ultra vires and void.

2. MONOPOLIES AND COMBINATIONS—ILLEGAL CONTRACTS.

A contract by which a Michigan corporation agrees with other corporations and persons doing business in a particular article of commerce that each of said parties shall convey its entire property and business to a new corporation for the purpose of controlling the price of said article, and each of the parties becomes practically a mere employé of the new corporation, and subject to its dominion and control, is unlawful, under the provisions of the Michigan statute of 1889, which declares certain contracts and combinations unlawful, and provides a punishment for parties entering into the same. 3 How. Ann. St. § 9354j.

3. SAME—CONSTITUTIONAL LAW.

The above statute, though perhaps of doubtful constitutionality, is not so clearly invalid as that a court of first instance would be justified in declaring it void.

**4. SAME—RIGHTS OF PARTIES TO ILLEGAL CONTRACT.**

A corporation entering into a contract which is illegal as against public policy, and also as contrary to the express provisions of a statute forbidding monopolies and combinations, is not entitled to any relief upon such contract against the other parties thereto; but where, after making such agreement, it decides to withdraw therefrom, it is entitled to preventive relief, such as an injunction to prevent the combination from taking possession of its property pursuant to the terms of the contract.

This was a bill by the Merz Capsule Company, a corporation organized under the laws of Michigan, and doing business at Detroit, against Robert H. McCutcheon, J. Ernest Warren, James Wilkie, John A. Grogan, William H. Warren, the National Capsule Company, and the United States Capsule Company, praying that a certain contract between complainant and defendants should be declared null and void, and that defendants be enjoined from carrying out the same as against the rights of complainant. Complainant was engaged in the business of manufacturing and selling gelatine shells or capsules, and on November 29, 1893, it entered into a contract with the other defendants (excepting the United States Capsule Company), who were engaged in the same business, to pool their interests in such business, and form a corporation under the laws of New Jersey, under the name of the United States Capsule Company. After the preliminary papers had been signed, and the necessary steps taken for the organization of such New Jersey corporation, the stockholders of the complainant company reconsidered their action, and resolved to remain an independent corporation. The other parties to the combination, however, endeavored to hold the complainant company to its agreement, and took steps to obtain possession of its plant. Complainant thereupon filed this bill. The agreement was as follows:

This agreement, made the 29th day of November, 1893, between the National Capsule Company, a corporation organized under the laws of the state of New Jersey, and doing business at Indianapolis, Indiana; the Merz Capsule Company, a corporation organized under the laws of the state of Michigan, and doing business at Detroit, Michigan; J. E. Warren and James Wilkie, copartners doing business at Detroit, Michigan, as the Warren Capsule Company; and John A. Grogan and W. H. Warren, copartners doing business at Detroit, Michigan, as the Michigan Capsule Company,—witnesseth:

(1) That said parties agree to organize a corporation for the manufacture and sale of hard, empty, gelatine capsules; the main office and point of shipment of the goods manufactured by said company to be at Detroit, Michigan. The capital stock to be ($70,000.00) seventy thousand dollars, allotted among the parties hereto as follows: Twenty thousand dollars ($20,000.00) each to be allotted to the National Capsule Company, the Merz Capsule Company, and jointly to the parties doing business as the Warren Capsule Company, and ten thousand ($10,000) dollars to be allotted jointly to the parties doing business as the Michigan Capsule Company. Three-quarters of the stock allotted to each of said parties shall be issued at the time of the organization of the company. The remaining one-quarter of each allotment shall be held as treasury stock of the new company until the several parties shall demonstrate that the present capacity of their respective plants is as follows: The National Capsule Company at least twenty gross of completed capsules per day; the Warren Capsule Company at least twenty gross of completed capsules per day; the Michigan Capsule Company at least ten gross of completed capsules per day. The capacity of each plant to be determined by the average amount produced during a

test of five consecutive days of ten hours each, to be had in the presence of the representatives of each party, and under ordinary conditions of manufacture. Such test to be had within three months from the date of the organization of said corporation, unless said test shall be prevented by reason of injury or destruction of the plant by the elements, or for other good and valid reasons, in which case a reasonable time in addition shall be allowed to restore the plant to a proper working condition. In case any of the parties above named shall fail to demonstrate that the capacity of their plant is as above stated, the twenty-five per cent. of the stock retained by said corporation shall be forfeited by said party, and remain the property of the corporation.

(2) The parties hereto hereby agree to sell and convey to said corporation, upon its organization, free and clear from all incumbrances, their respective plants operated by them in the manufacture of hard, empty, gelatine capsules, including all real estate owned and used by them for such purpose, together with all machinery and appliances of every kind pertaining thereto, stock in trade, good will, and patentable devices, labels, trade-marks, trade secrets (except processes for treating gelatine), now owned by said parties, and used in connection with the business of manufacturing hard, empty, gelatine capsules, and in payment therefor (except for manufactured stock, or boxes or raw materials) to receive from said corporation mortgage bonds to the amount of the appraised value of the property thus conveyed to said corporation. Said bonds to bear interest at eight per cent. per annum, payable five years from the date of issue, and only sufficient amount of bonds to be issued to cover the value of the property conveyed to said corporation by all of the parties hereto. Said bonds to be secured by mortgages covering all of the property of every kind belonging to said corporation. The value of the property conveyed to said corporation by the respective parties shall be determined in the following manner: If all of the parties hereto are unable to agree upon the value of the property conveyed by each, the value of the real estate now owned·by each party in Detroit shall be appraised by three disinterested and competent parties; one to be chosen by the National Capsule Company, and one by the other three parties, and the two so chosen to select a third. The decision of said appraisers, or the majority of them, to be final. The value of the real estate now owned by the National Capsule Company in Indianapolis to be appraised by three appraisers to be chosen in a similar manner, whose decision, or that of a majority of them, is to be final. The machinery and appliances of every kind, including box-making machinery, to be appraised by three disinterested and competent appraisers at the price at which it can be duplicated in open market; and, in estimating the value thereof, only such machinery and appliances shall be considered as are practical in the manufacture of empty capsules, and now used by the parties hereto in the conduct of their business. The appraisers to be chosen as follows: The National Capsule Company to select an appraiser in Indianapolis, the other parties to select an appraiser from Detroit, and the two so chosen to select a competent expert machinist from a city outside of the two cities above named; the decision of such appraisers, or that of a majority of them, to be final.

(3) The parties hereto agree that each shall receive in payment for the manufactured stock, boxes, and raw material conveyed to said corporation, notes of said corporation payable six months from the date of delivery of the property, and all marketable manufactured and unmanufactured stock of complete empty capsules to be paid for at thirty (30) cents per thousand, partially manufactured goods and all other material as can be readily utilized at appraised value, and raw material to be appraised at market value.

(4) All expenses of appraisal and of organization of the new company shall be borne by the new company.

(5) Each of the parties hereto agree, from the date hereof, not to make, sign, or accept any contract whatsoever for the future sale or delivery of any hard, empty capsules, or any other contract whatsoever, except ordinary contracts for immediate sale and delivery. All old, existing contracts with drug jobbers are to be completed by the new company, provided such are not for over fifty gross of capsules.

(6) It is also agreed that none of the parties hereto shall hereafter engage in the manufacture or sale of empty gelatine capsules in any manner whatsoever.

In witness whereof, the parties hereto have set their hands and seals, and have affixed the seals of the various corporations, by the hands of their respective officers thereunto duly authorized, the day and year first above written.

National Capsule Company,
By Charles M. Stephens, President.

Attest:
Lincoln B. Palmer, Secty.

The Merz Capsule Company,
By S. E. Heineman, Pres.

Attest:
Sol. E. Heineman, Secretary.

Warren Capsule Company,
By J. Ernest Warren, Jas. Wilkie.
Michigan Capsule Company,
By John A. Grogan, W. H. Warren.

All patents, procured or pending, owned by parties hereto, shall be assigned to the new company, with the sole provision that there shall be a reversion to the present owner thereof in case of dissolution, or failure or sale of the assets under the mortgage, or retirement from active business of the new corporation. The word "dissolution" shall, however, not be construed to apply to a nominal or formal reorganization or merger of the new company with any other corporation, person, or persons.

David E. Heineman and Edwin F. Conely, for complainant.

H. E. Spaulding, F. A. Brooke, and Russell & Campbell, for defendants.

SEVERENS, District Judge. In my opinion, the complainant in this case is entitled to the relief prayed. The case is one of much importance, and will doubtless undergo a review in the appellate court. I shall therefore merely summarize the grounds upon which my conclusion is founded.

One of the grounds upon which the invalidity of the agreement between the parties of November 29, 1893, is asserted, viz. that the combination was a conspiracy in restraint of trade or commerce among the several states, and was illegal under the act of July 2, 1890, has, since the argument of this case and while it has been under consideration, been declared to be untenable by the supreme court of the United States in the case of U. S. v. E. C. Knight Co., 15 Sup. Ct. 249, and may be laid out of further consideration. I am of opinion, however, that that agreement was in contravention of the laws and public policy of the state of Michigan, in that it was a disposal of substantially the entire business plant of the Michigan corporation, as the consideration for its purchase of the shares of stock in the United States Capsule Company, a new Jersey corporation. The general rule may be stated to be that it is incompetent for a corporation to subscribe for stock in another corporation. It must be acknowledged that there are exceptions to this rule, founded upon a variety of peculiar circumstances, which it is not necessary here to enumerate. I am unable to discover any ground upon which this case can be held within any of such exceptions. But, however this may be, if the corporation in which the stock is taken is a domestic one, and subject to the same laws and dominion as the one taking such stock, or where, if the corporations are organized in different states, they are subject to regulations of a substantially identical

character, my opinion is that where, as in this case, the law of the corporation in which the stock is taken is of a substantially different character, and fails to impose the liabilities and create the obligations imposed by the law of the corporation subscribing for the stock, such subscription is ultra vires of the latter corporation, and is illegal and void. The laws of Michigan, under which the complainant is incorporated, impose restrictions, duties, and obligations upon it of a character which indicate the purpose and policy of the laws of the state of Michigan in providing for its incorporation. I shall not go into details in respect to those provisions. They are sufficiently obvious upon an inspection of the statute. The general fact is sufficient for the present purpose. They are safeguards erected by the state, and constitute the bounds and conditions of corporate action. It is quite clear that the laws of New Jersey fail to make many of those conditions effectual or obligatory upon corporations organized thereunder, either in the original incorporation, or in corporate action; and it is clear that the statutory regulations, in that regard, of the state of New Jersey, do not respond to what, by the laws of Michigan, is deemed essential. By the agreement in question the Michigan corporation conveys substantially its entire assets to the New Jersey corporation, abandons its business as a proprietor thereof, and becomes practically a mere employé of the New Jersey corporation, and subject to its dominion and control.

My opinion is, also, that the above-mentioned agreement is obnoxious to the provisions of Act 225 of the Laws of Michigan (1889), entitled "An act declaring certain contracts, agreements, undertakings and combinations unlawful, and to provide punishment for those who shall enter into the same or do any act in performance thereof." 3 How. Ann. St. 9354j. It was strenuously argued before me by counsel for defendants that this statute is unconstitutional and void, in that it is class legislation. Whether or not this contention is well founded, I do not now undertake to decide. It may be admitted that there is fair ground for doubt of the validity of this statute; but its invalidity is not so clear and free from doubt as that a court of first instance would, in my opinion, be justified in declaring it void. For the reasons thus briefly stated, my conclusion is that the agreement upon which the defendants found their supposed rights was not authorized by the laws of Michigan, and is therefore void. It is unnecessary, therefore, to pass upon other grounds upon which the agreement is alleged to be invalid.

It remains to be considered what relief should be administered upon this state of things. The proof sufficiently shows—and, indeed, the nature of the transaction demonstrated this—that the complainant, on its own account, is not entitled to claim any relief founded upon the contract; but the contract itself being contrary to law furnishes no support for the aggressive attitude and conduct of the defendants. The complainant's conduct has been disingenuous, but I think it has the law of the case. The result is, as it seems to me, that the parties stand, in respect of their property rights, upon the same footing as if the contract had never been made;

and upon the restoration by the complainant of what it has received, upon the footing of the contract, it would seem that the complainant is entitled to preventive relief, and that the defendants, or such of them as threaten to invade the property of the complainant, should be restrained from interfering therewith. Counsel may prepare a decree in consonance with these views, and the same will be entered of record.