DAVIS et al. v. A. BOOTH & CO.

(Circuit Court of Appeals, Sixth Circuit. August 2, 1904.)

No. 1,310.

1. SALES—GOOD WILL—EQUITY—JURISDICTION—MULTIPLICITY OF SUITS.

Equity has jurisdiction to restrain the violation of an agreement entered into as a part of the sale of a business, by which the persons interested therein agreed not to again engage in business in certain localities for a definite time, because of the difficulty in estimating the damages accruing, and to prevent a multiplicity of suits.

2. SAME—VALIDITY OF CONTRACT—PUBLIC POLICY.

An agreement by which the stockholders of a corporation, on selling its assets to complainant's assignor, agreed not to again engage in a similar business in specified localities for a period of 10 years, or do any act tending to impair the good will of the business sold, was not contrary to public policy.

3. SAME—ANTI-TRUST ACT.

Where a corporation engaged in the business of buying and selling fish sold out its assets and good will to plaintiff's assignor, and the seller no longer retained any interest in the property, so that the sale was not a mere combination of owners and properties under one management, the sale was not in violation of the federal anti-trust act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], prohibiting contracts in restraint of trade, though the contract might incidentally or in some remote degree injuriously affect interstate commerce.

4. SAME—STATE STATUTES—CONSTRUCTION.

3 How. Ann. St. § 9354j, denominated an act prohibiting certain trust combinations, and providing that all contracts, the purpose or intent of which shall be in any manner to prevent or restrict free competition in the sale of any article or commodity, or in any other branch of business or labor, shall be utterly illegal and void, provided that it shall not invalidate or affect contracts for the sale of the good will of a trade or business, does not prohibit a contract for the sale of a business where it was not intended that the seller should thereafter have any interest in the property, or an agreement by which the seller's stockholders contracted not to again engage in a similar business in competition with the buyer in certain places for a specified time.

5. SAME—RESTRAINT OF COMPETITION.

An agreement ancillary to a sale of a corporation's business, by which the stockholders, who received the purchase price, agreed that, in order to protect the good will of the business so sold, they would not either directly or indirectly engage in the same business within certain distinct limits for a period of 10 years, was not void, as an unreasonable restraint of competition in trade, at common law.

6. SAME—CONSTRUCTION.

Where a contract ancillary to the sale of a business provided that the stockholders of the seller would not again engage in a similar business

---

¶ 1. See Injunction, vol. 27, Cent. Dig. § 121.

for a period of 10 years in the territory, or the immediate vicinity of the territory, dealt in by the corporation, or operated in by it or its agents, or the immediate vicinity of such territory, the localities guarded against were restricted to those in which the selling company had establishments for doing business, and the immediate vicinity thereof, and did not include all parts or every one of the United States in which a former customer resided, or into which the corporation's correspondence had extended, or through which an agent of the company had traveled.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

For opinion below, see 127 Fed. 875.

Edward E. Kane and Fred A. Baker, for appellants.

Henry M. Duffield and Charles S. Thornton, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge.   The object of this bill filed in the Circuit Court by the appellee, A. Booth & Co., was to obtain an injunction against the appellants to restrain them from violating an agreement made by them with William Vernon Booth, to the benefits of which the appellee claimed to be entitled.   It states:   That the complainant is a corporation organized under the laws of Illinois on August 1, 1898, with a capital of $5,500,000, for the purpose of buying, catching, and selling fish, and having its general office at Chicago. That the Davis Fresh & Salt Fish Company was a corporation organized under the laws of Michigan for a similar business, with headquarters at Detroit.   That on or about August 14, 1898, the last-named company, for the consideration of $17,473.14, sold all its properties, including the good will of its business conducted at Detroit, and gave a bill of sale, with warranty of title, to William Vernon Booth, on September 14, 1898, and Davis gave a personal guaranty of the contract of sale.   That, as an inducement to the sale, Davis and the other stockholders of the selling company entered into the following agreement:

"This instrument witnesseth, that William Vernon Booth has purchased the plant, business and good will of the business of the Davis Fresh & Salt Fish Co., and has paid therefor the sum of $17,473.14; that in making said transfer, and as an inducement to said William Vernon Booth to purchase said plant, business and good will and pay the sum aforesaid for the same, we each have agreed that we would not, and we now do agree, each for himself, jointly and severally with him, the said William Vernon Booth, his heirs and assigns, forever, that we will not, during the next ten years, in the territory or the immediate vicinity of the territory dealt in by our company, or operated in by ourselves or the agents or employees of the company engage or in any manner be interested in, either directly or indirectly, for ourselves or for others, the same or like kind or character of business as that heretofore conducted and now being carried on by said company, its officers, agents, employees and assigns, and that we will not, during the said period of ten (10) years, either directly or indirectly, be guilty of any act interfering with the business, its good will, its trade or its customers, or come in competition with the same; and we will not, jointly or severally either in firms or corporations, or as individuals or in any other way, directly or indirectly interfere with the said trade or business, or do any act prejudicial to the same or any part thereof, or interfere with the persons employed therein; the meaning hereof being that the said William Vernon Booth is buying and paying for the good will of the business in the largest and fullest scope of the term; and that we will not, and each agrees that he will not, do anything to interfere

with or injure the said business, but will, during said period, lend his aid and best influence to the promotion and advancement of the same.

"In witness whereof, we hereunto subscribe our names and affix our seals, jointly and severally, this first day of August, A. D. 1898.

"Edgar A. Davis.
James T. Donaldson.
Belle R. Harper.
Ed. E. Kane.
Belle B. Davis."

—Which agreement was delivered and the consideration of $17,473.14 paid on September 14, 1898, and said consideration was then distributed among the stockholders of the selling company. That on September 27, 1898, said William Vernon Booth, for a valuable consideration, sold to the complainant all the properties so purchased of the Davis Fresh & Salt Fish Company, including the good will of the business, and assigned to said complainant the above-quoted agreement of the stockholders of said last-mentioned company. That at the time of its sale to William Vernon Booth the Davis Fresh & Salt Fish Company was conducting its business not only at Detroit, but in the following named places—either selling to regular customers, or having established agencies there—namely: "Cincinnati, Cleveland, Columbus, and Dayton, in the state of Ohio; Louisville, Kentucky; Nashville, Tennessee; St. Louis and Kansas City, Missouri; Buffalo and New York City, in the state of New York; Grand Rapids, Jackson, East Saginaw, Battle Creek, Lansing, and Port Huron, in the state of Michigan." That Davis became an employé of the complainant, but after a time withdrew, and with Delos Cook, Michael J. Dee, and Alva M. Hungerford organized a limited partnership under the laws of Michigan, and filed a certificate thereof in the office of the clerk of the county of Wayne, in that state. That on August 26, 1898, the complainant made a similar purchase of the E. A. Edson Company, an Ohio corporation doing a similar business at Cleveland, and also at Detroit, and that Edson, its president, made a similar agreement with that of the stockholders of the Davis Fresh & Salt Fish Company, and that it made a like purchase of the Buffalo Fish Company, a New York corporation, and obtained a similar agreement form its stockholders. That Davis, after leaving complainant, organized the Gopher Fish Company in opposition to complainant, at St. Paul, Minn., and induced Donaldson, who was one of the signers of the agreement of the Davis Fresh & Salt Fish Company stockholders, who was subsequently in the employment of the complainant, to take charge of the said Gopher Fish Company, and also induced Hungerford, another of said signers, to leave complainant and become bookkeeper of the Wolverine Fish Company. That Davis and Edson made public announcement that they intended to "fight complainant in a business way," and intended to organize corporations in Detroit, Cleveland, New York and other places, which should be under one control, and act together in business policy, and fix prices for the purchase and sale of fish, whereby they could better promote the interests of the public, and that they caused to be published in leading journals articles (which are copied into the bill) indicating that they intended to carry on, or cause to be carried on, a strong competition with the complainant in

131 F.—3

the fish business.   That they characterized the complainant as a "trust," the contrary of which the complainant avers to be the fact, and it vouches a decision of the Supreme Court of New York to that effect. That Davis, Edson, and another have entered actively into the fish business in the territory, and the vicinity of the territory, dealt in by their respective corporations, in violation of their agreements, and organized companies to prosecute said business at New York, Cleveland, and Detroit.   That the Wolverine Fish Company was organized by Davis to more conveniently violate his agreement, and has been and now is conducting and threatens to conduct its business in a manner calculated to injure the complainant, and render the good will purchased of his company valueless.   That he interferes with its business, trade, and customers.   That he solicits consignments of fish and makes purchases thereof from the former customers of his company, and has in many instances drawn away such customers to the Wolverine Fish Company, and that Edson, Hungerford, and Dee are assisting him. That Davis is sending out to the former customers of his company false statements injurious to the complainant's reputation for honesty and fair dealing, which tend to the loss of complainant's business, and that Davis is insolvent, and a judgment against him would be uncollectible; and a considerable number of the statements referred to are set out, the truth of which is denied.   And the complainant says it has been greatly injured by this conduct of the defendants, and has sustained already the loss of more than $100,000, and will continue to suffer further irreparable loss unless the defendants are enjoined, etc.

The prayer is that the defendant Davis be compelled to perform his agreement made with William Vernon Booth, and that he—

"And his agents and employés be enjoined during the full term of ten years from August 1, 1898, from engaging or in any manner being interested, directly or indirectly, for themselves or for others, in the city of Detroit, or in the immediate vicinity of any territory dealt in on or prior to August 1, 1898, or operated by the said Davis Fresh & Salt Fish Company, or the defendant Davis, or the agents or employés of the Davis Fresh & Salt Fish Company, in catching, buying, selling, handling, or dealing in any kind of fish or other salt or fresh water food products, in the storage thereof, the manufacture of, or dealing in any manner in fish products, and from engaging in or in any manner being interested in, in the territory aforesaid, any other kind or character of business, the same as or like that conducted and carried on by the Davis Fresh & Salt Fish Company on and prior to August 1, 1898, or by its officers, agents, employés, or assigns, and from soliciting or inviting, in the territory aforesaid, other persons to buy from or sell to or otherwise deal with them, or either of them, in said business aforesaid, and from interfering with the business formerly transacted by the Davis Fresh & Salt Fish Company, and by it sold, assigned, and transferred to William Vernon Booth, its good will, its trade, or its customers, and from coming into competition with this complainant's business in the city of Detroit and vicinity, and wherever the business of the Davis Fresh & Salt Fish Company extended at the time of its sale to and contract with said Booth, and from interfering in any way, directly or indirectly, with the said trade or business, and from doing any act prejudicial to the same, or any part thereof, and from interfering with the persons employed in the service of this complainant, and from using their aid or influence in regard to this complainant's trade or business, otherwise than for the promotion and advancement of the same, and that the said defendants Eugene R. Edson, Alva M. Hungerford, Michael J. Dee, and Wolverine Fish Company, Limited, their agents, servants, and employés, be enjoined during the full period of ten years from August 1, 1898, from aiding the said Edgar

A. Davis or participating with said Davis in and otherwise, directly or indirectly, interfering with the business of the complainant, or with the persons employed therein, and from using their aid and influence in connection with the said Davis, otherwise in regard to complainant's trade or business, otherwise than for the promotion and advancement of the same, and that the said Edgar A. Davis, Eugene R. Edson, Alva M. Hungerford, Michael J. Dee, and the Wolverine Fish Company, Limited, be so enjoined and restrained during the pendency of this action; and that this complainant recover from the said defendants such sum as, upon a proper accounting, the complainant may show it has been damaged by reason of the wrongful action of the said defendants, and for such other and further relief as to the court may seem fit."

Many affidavits and exhibits were attached to the bill in support thereof. We have stated the contents of the bill with considerable fullness, in order to show the scope of the controversy.

The complainant moved for a preliminary injunction. All the defendants except Edson, who was not served or did not appear, answered the bill, and filed a large number of affidavits of other persons in opposition to the motion—so many that we cannot take space to array them. It is sufficient to say that the answers and affidavits raise a conflict of proof in reference to several of the matters stated in the bill and the affidavits accompanying it. The arguments made here, in the main, proceeded upon the broader aspects of the controversy. Besides, having regard to the practice which obtains in this class of appellate proceedings, we should not go into a nice balancing of proof or estimate of particulars. This being an appeal from an order granting a preliminary injunction, unless we should see that the court below had fallen into a positive mistake in regard to some important fact, we should not disturb its findings, and it is not claimed that such a mistake has happened. The court below granted this preliminary injunction by the order following:

"Now, therefore, we strictly command and enjoin you, the said Edgar A. Davis, your attorneys, solicitors, clerks, servants, and agents, under the penalties that may follow on you in case of disobedience, that you forthwith, and until the further order of this court, desist from engaging or in any manner being interested, directly or indirectly, for yourself and for others, in the city of Detroit, or in the immediate vicinity of any territory on or prior to August 1, 1898, dealt in or operated by the Davis Fresh & Salt Fish Company, described in the bill of complaint in this cause, or the defendant Davis, or the agents or the employés of the said Davis Fresh & Salt Fish Company, in catching, buying, selling, handling, or dealing in any kind of fish, or other salt or fresh water food products, in the storage thereof, the manufacture of or dealing in any manner in fish products, and from engaging in, or in any manner being interested in, in the territory aforesaid, any other kind or character of business, the same as or like that conducted and carried on by the Davis Fresh & Salt Fish Company on and prior to August 1, 1898, or by its officers, agents, employés, or assigns, and from soliciting or inviting, in the territory aforesaid, other persons to buy from or sell to or otherwise deal with you or the Wolverine Fish Company, Limited, or either of them, in said business aforesaid, and from interfering with the business formerly transacted by the Davis Fresh & Salt Fish Company, and by it sold, assigned, and transferred to William Vernon Booth, its good will, its trade, or its customers, and from coming into competition with this complainant's business in the city of Detroit and vicinity, and wherever the business of the Davis Fresh & Salt Fish Company extended at the time of its sale to and contract with said Booth, and from interfering in any way, directly or indirectly, with the said trade or business, and from doing any act prejudicial to the same or any part thereof, and from interfering with the persons employed in the service of this complainant, and

from using your aid or influence in regard to this complainant's trade or business, otherwise than for the promotion and advancement of the same. And now, therefore, we strictly command and enjoin you, the said Alva M. Hungerford, Michael J. Dee, and the Wolverine Fish Company, Limited, your attorneys, solicitors, clerks, servants, and agents, under the penalty that may follow in case of disobedience, that you are forthwith and until the further order of this court to desist from aiding the said Edgar A. Davis, or participating with said Davis in, directly or indirectly, interfering with the business of the complainant, or with the persons employed therein, and from using your aid and influence in connection with the said Davis or otherwise in regard to complainant's trade or business acquired under the said contract, otherwise than for the promotion and advancement of the same."

The defendants appeal from this order.

1. It is assigned as error that the court held the bill of complaint to state a case entitling the complainant to relief by injunction; and it is argued that the proper remedy is by an action at law, and further that public policy is opposed to the enforcement of such contracts. With regard to the objection that there is a remedy at law, it is quite clear that the difficulty in estimating the damages in such a case, and the succession of causes of action and the multiplicity of suits likely to ensue, furnish ample reasons for the exercise by a court of equity of its power to restrain the continuance of the supposed wrongdoing. And if the contract is not one which should be held by the court unlawful as opposed to public policy, there is no sufficient reason for withholding relief. We are referred to the case of Bensley v. Texas & Pac. Ry. Co., 191 U. S. 492, 24 Sup. Ct. 164, 48 L. Ed. 274, as conclusive of the validity of this objection. A railroad company had entered into a contract that it would not establish another depot within three miles of one agreed to be built upon the plaintiff's land. Upon a bill filed to restrain the company from establishing a depot within that distance, as ordered by the State Railroad Commission, it was held that the injunction should not be allowed. The decision was rested upon the ground that the railroad company was by reason of its charter bound by a public duty in regard to the location of its depots, which it ought not to be permitted to disable itself from performing. In the present case the parties to the contract were private parties, upon whom no public duty was imposed, other than such as rest upon all private individuals. The ground upon which the decision cited was based is wholly absent here. In the case of Norcross v. James, 140 Mass. 188, 2 N. E. 946, the contract sought to be enforced was a merely personal covenant, and did not run with the land subsequently conveyed to the defendant. Whether the contract in question is void in law, upon the ground that it is in restraint of trade or competition in trade, is a question which will be discussed further on.

2. One of the principal grounds upon which it is urged for the appellants that the agreement in question is void is that it was an agreement in restraint of trade, in violation of the anti-trust act of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]. But that act, as was held in United States v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, is leveled against contracts which have a direct relation to interstate commerce, and does not extend to contracts which may incidentally or in some remote way come into relation with, or become the source of, interstate traffic. In that case a New Jersey

corporation, being already in control of a large majority of the sugar refineries in the United States, acquired the control, by a purchase of their stock, of four Philadelphia refineries, and the question was whether such an acquisition was a violation of the anti-trust act. It was not doubted that the sugar refined there would, to a large extent, at least, become the subject of interstate traffic, but such traffic was not the subject directly involved. We think there is nothing in the anti-trust act which rendered unlawful the purchase by William Vernon Booth and his transfer, to A. Booth & Co., of the plant of the Davis Fresh & Salt Fish Company, or which necessarily rendered invalid the agreement of the stockholders of the latter company, which was ancillary to the contract of sale. Nor can this conclusion be affected by the fact that A. Booth & Co. also purchased other plants and stocks to an extent that tended to create a power to monopolize the fish market. There is a clear distinction, which seems to be lost sight of in the argument here, between the aggregation of properties by purchase when the seller no longer retains an interest in the property, and a combination of owners and properties under one management, where each owner's interest is continued in the combination. To this latter class belongs the case of Merz Capsule Co. v. United States Capsule Co. (C. C.) 67 Fed. 414, affirmed in 71 Fed. 787. It may be that the practice of acquiring by a single corporation, through purchase of a great number of single plants in several states, of power to control the market of a given commodity, in a wide area of territory, may become injurious to the public; but, if so, it would seem that the limitations and the means for the restriction and correction required must be supplied by the lawmaking power, since the old law against forestalling the market has become obsolete. It is possible that it may be developed at the final hearing that interstate traffic may be directly involved in this agreement. But if so, it will be prudent to postpone final decision in respect to the consequences thereof upon the validity of the agreement until the case is presented upon full proof, rather than by ex parte affidavits as now.

3. It is further contended that the contract was rendered void by the statute of Michigan of 1889, which enacted that:

"All contracts * * * the purpose, object or intent of which shall be * * * in any manner to prevent or restrict free competition in the sale of any article or commodity produced by mining, manufacture, agriculture or any other branch of business or labor, shall be utterly illegal and void * * * provided, however, that this section shall in no manner invalidate or affect contracts for what is known and recognized at common law and in equity as contracts for the good will of a trade or business."

But that act contained a proviso excepting certain classes and subjects which rendered it of doubtful constitutionality. Such legislation was held void in Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, and the Michigan statute was amended in 1899, which was after this transaction, so as to remove the objection. The act of 1889 is denominated in 3 How. Ann. St. § 9354j, as one prohibiting "certain trust combinations," and we have no doubt it was intended for such cases. We think that the intent which made the contract or combination unlawful was one in which both parties participated, and that the act was not intended to comprise a case where there was a sale

and purchase of property, after which the seller should have no interest in the property, and therefore would have no intent as to its further use. The act of 1899 is subject to the same construction, but, as it would not render unlawful a contract which had been lawfully made, we need not consider it further.

4. But finally it is insisted that the stipulation in question contained in the agreement of date August 1, 1898, is void at common law, for the reason that it is an unreasonable restraint of competition in trade. The agreement was ancillary to the contract of sale made by the Davis Fresh & Salt Fish Company, in which these stockholders had the entire interest, and of the fruits of which sale they were the beneficiaries. That contract expressly included the good will of the business of the seller, and the stipulation of the stockholders was made, as it recites, to induce the sale; and it was for the protection of the vendee in the enjoyment of it, and, as it seems to us, would pass by the transfer of the property, business, and good will to William Vernon Booth's vendee, to whom the agreement was also assigned. The question of the reasonableness of such a stipulation is one which was elaborately discussed by Judge Taft in delivering the opinion of this court in United States v. Addyston Pipe & Steel Co., 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122. It would be useless to reiterate the grounds and reasons upon which it was held that such a stipulation is valid if it goes no farther than to support and protect the interests transferred by the contract of sale. If tested by this rule alone, we think this stipulation should be held valid and obligatory.

But referring again to the distinction already alluded to between an aggregation effected by purchase, and a combination of several owners to pool their business and eliminate competition, it is to be observed that in the present instance it appears that the purchase price paid to the Davis Fresh & Salt Fish Company consisted partly of cash and partly of stock in the corporation of A. Booth & Co., and that therefore the transaction was of a mixed character. This is an aspect of the case which has given us most concern, and in respect of which we are not aware of any decision precisely in point. We are unwilling to decide a matter of so much importance at this preliminary stage of the case, and especially so because no particular attention has been given to it in the briefs and argument of counsel. We purpose, therefore, to give such directions in regard to the continuance of the injunction as will preserve the rights of parties from serious impairment in the interim, and reserve this and another question reserved in another part of this opinion until final hearing.

There are no other questions which seem to require independent discussion, except one which relates to the scope of the injunction awarded by the court below. We are of opinion that the proper construction of the agreement given by the stockholders of the Davis Fresh & Salt Fish Company requires that the description of the localities in which their stipulations should be operative, stated in the writing at the beginning of said stipulations, extends to and qualifies all of them, and that such localities are restricted to those in which the company had establishments for doing business, and the immediate vicinity thereof. It could not mean all parts or every one of the United States in

which a former customer resided, or into which its correspondence had extended, or through which some agent of the company had traveled. No definite or reasonable bounds are indicated by the contract, other than those which we have indicated. Besides, the inclusion made by the words "or the immediate vicinity of the territory," etc., implies some place from which the "immediate vicinity" is to be estimated, and excludes the idea of reckoning from some indefinite point. The ordering part of the injunction directed to the Wolverine Fish Company is also too broad, when, in addition to forbidding certain conduct in conjunction with Davis, it proceeds to forbid that company from doing such things "otherwise." The Wolverine Fish Company was a stranger to the Davis agreement, and, as to anything in which he should not participate, it was not affected thereby. The injunction should be modified accordingly. We think, also, that the complainant should be required to give bond to indemnify the defendants from damages arising from the issuance of the writ, in case the bill should not be finally sustained, as a condition to the continuance of the injunction.

With these modifications, the order of the Circuit Court is affirmed. The costs of this appeal will be divided.