## NORTHWESTERN CONSOL. MILLING CO. v. WILLIAM CALLAM & SON.

### (Circuit Court, E. D. Michigan, N. D. February 1, 1910.)

### No. 72.

1. COURTS (§ 343\*)—PRACTICE IN FEDERAL COURTS—DEATH OF DEFENDANT—ABATEMENT OF ACTION FOR INFRINGEMENT OF TRADE-MARK.

Where a suit for infringement of a trade-mark was instituted against two defendants, such infringement constituted a tort for which both were liable, so that on the death of one the suit did not abate as to the other, and under Rev. St. § 956 (U. S. Comp. St. 1901, p. 697), providing that if there are two or more plaintiffs or defendants in a suit where the cause of action survives to the surviving plaintiff or against the surviving defendant. and one or more of them dies, the right to action shall not abate, but shall be proceeded with by the surviving plaintiff against the surviving defendant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 915, 916; Dec. Dig. § 343.\*]

2. MONOPOLIES (§ 20\*)—SHERMAN ACT—CONSOLIDATION OF CORPORATIONS.

Sherman Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), prohibiting trusts and monopolies, does not condemn the purchase by three corporations of two insolvent corporations engaged in the same business, nor in the conduct of the business thereafter by the three purchasers, especially in an effort to liquidate the indebtedness.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 20.\*]

3. MONOPOLIES (§ 10\*)—SHERMAN ACT—VIOLATION—EFFECT.

Sherman Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), prohibiting a monopoly, provides its own penalties for the violations of its provisions, and does not deprive the offender of redress for a civil injury.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 9; Dec. Dig. § 10.\*]

4. TRADE-MARKS AND TRADE-NAMES (§ 70\*)—INFRINGEMENT—UNLAWFUL COMPETITION.

Complainant in 1891 adopted and commenced to use the word "Ceresota" as a trade-mark for its best grade of flour made from spring wheat, and built up a large trade therefor in Michigan and the other states, having expended $500,000 in advertising. Complainant's trade-mark was registered on October 31, 1905, and in September, 1906, defendants, who operated a flourmill in Michigan, began to use the word "Certosa" as a

---

trade-mark for flour which they falsely represented to be made from Minnesota and Turkey wheat, when in fact it was made from winter wheat, which makes an inferior flour. Defendants applied for registration of the word "Certosa" as a trade-mark which was denied, but, notwithstanding this, used the word in competition with plaintiff in the sale of flour in interstate commerce. *Held*, that defendants' acts constituted unlawful competition, and an infringement of complainant's trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

In Equity. Bill by the Northwestern Consolidated Milling Company against William Callam & Son for infringement of trade-mark. Decree for complainant.

P. H. Gunckel, for complainant.
Beach, O'Keefe & Rockwith, for defendants.

SWAN, District Judge. Complainant is a corporation organized under the laws of Minnesota, and engaged in the manufacture of wheat flour in its several mills at Minneapolis in that state. In 1891 it adopted and commenced the use of the word "Ceresota" as a trade-mark for its best grade of flour of its manufacture, and has since that time continuously and extensively used that mark to indicate its product, and alleges that because of the high quality of the flour so made and marked, and by extensive advertisement of their product as "Ceresota" flour, has built up a large trade therefor, by that name, having expended in advertising about $500,000; that under the name "Ceresota" that flour is dealt in and known both in foreign countries and in nearly all of the states of the Union, and that complainant has for many years had a profitable and steady trade in that flour in Michigan; that its aggregate sales under that trade-mark up to the time of this suit aggregate about 16,000,000 barrels; that in Michigan its sales from 1895 to 1907 aggregate about 350,000 barrels, and from 1897 to the fall of 1906 were about 125,000 barrels. Complainant's trade-mark was registered under the act of Congress on October 31, 1905.

The defendants operate a flourmill in Saginaw known as the "Star Mill." About September, 1906, they began the use of the word "Certosa" as a trade-mark for flour of their manufacture, and have since used that trade-mark or brand continuously, and sold flour thereunder in Saginaw and elsewhere in Michigan. Defendants admit the ownership and operation of the Star Mills at Saginaw for the last 15 years; that prior to May 19, 1907, the mill was operated by both defendants, but was owned solely by defendant William Callam, who died May 19, 1908. He devised the mill property to his son Frank, the codefendant herein. Defendants allege that:

"In May, 1906, they adopted the word 'Certosa' as a trade-mark for one of its best grades of flour; that defendant Frank Callam found the word 'Certosa' in an article of the Christmas 1906 number of Truth; that it is an historical Italian name for the monasteries of the Carthusian Order. One of the oldest monasteries at Florence, Italy, is known as the monastery of Certosa. That Callam believed this word singularly appropriate for the

firm's best brand of flour because of the fact that the monks of this monastery lived almost exclusively on a cereal diet."

These are substantially the facts pleaded by the parties. Both parties pack their products for market largely in cotton or paper bags on which their respective trade-marks or brands "Ceresota" and "Certosa" are printed in large capital letters diametrically across a circular design. The complainant's flour sold at $2 per sack. Defendants advertised and sold their product at $1.50 per sack.

A preliminary question is made by defendants upon the death of William Callam, it being claimed that thereby the suit abated. The record shows that the defendants were partners in the milling business, and that Frank from 1893 to 1907 had the entire control and management of the business, and selected and applied the mark "Certosa" to defendants' flour. The infringements alleged are torts, for which both defendants are liable. Section 956, Rev. St. U. S. (U. S. Comp. St. 1901, p. 697), declares that in such case the action shall not abate. Patton v. Brady, 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713; In re Connavay, Rec'r., 178 U. S. 435, 20 Sup. Ct. 951, 44 L. Ed. 1134; Estes v. Worthington (C. C.) 30 Fed. 465.

Defendants' petition for leave to amend the answer by pleading that complainant was organized and is operating in violation of Sherman Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), and contrary to the laws of Michigan and the common law has no merit. Defendant, referring to the proofs (Brief, p. 64) that complainant consolidated five different plants, two of which were insolvent and were bought out by the other three, and that all of these corporations carried on business for years after that time, and that all of the corporations are now in existence trying to liquidate their indebtedness, admits (page 70 of his brief):

"The combination represented by complainant is not illegal in any other sense, except that the law will not lend its aid to the accomplishment of its purpose."

Under Davis v. A. Booth & Company, 131 Fed. 31, 37, 65 C. C. A. 269, there is nothing in the Sherman act to condemn the purchase by three corporations of the two insolvent companies nor in the conduct of business thereafter by the three purchasers especially in their efforts to liquidate the indebtedness—apparently a consolidation to that end. Further, the matters referred to in the petition of defendants have no relevancy here. The Sherman act has its own penalties for violations of any of its provisions. It contains nothing that sanctions the argument that an offender against it shall be deprived of redress for a civil injury on the plea that he has been guilty of an infraction of that act which gives a remedy to one injured in his business or property against the transgression of the law, and does not suggest that one who has taken the property, infringed the trade-mark or patent of another, or refused to pay debts because of an alleged transgression of the Sherman act by the creditors, can invoke that act as a defense to liability either in suits in tort or contract. Independent Baking Powder Co. v. Boorman (C. C.) 130 Fed. 726; Connolly v. Union Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.

The proofs further show that the defendants are guilty of unfair competition, in passing off through their agents and employés defendants' product labeled "Certosa" as and for "Ceresota" flour, in misrepresentation as to the place of manufacture of their flour as labeled, the grade or quality thereof, and that it was made from Minnesota and Turkey wheat when it was not so in fact, and also in selling and offering their "Certosa" flour as spring wheat flour, which sells at a higher price than flour made from winter wheat.

Defendants also have infringed complainant's registered trade-mark. In defendants' application for registration of "Certosa" as a trade-mark, which was denied by the Patent Office, defendants made oath August 2, 1906, that they used that brand "in commerce among the several states," and made a like admission in their answer.

Complainant is entitled to a decree protecting it against the use of the word "Certosa" as a name for defendants' flour, because the use thereof for that purpose infringes complainant's trade-mark right both at common law and under the act of Congress providing for registration of trade-marks; that defendants have been guilty of unfair competition to the injury of complainant's business and rights. Complainant is also entitled to a perpetual injunction as prayed, and an accounting of damages and profits with respect to both trade-mark infringement and unfair competition, with costs to be taxed.