No. 28,611.

J. R. Good, S. S. Learned and C. H. Daugherty, as Trustees of Lawrence Lodge, No. 4, Independent Order of Odd Fellows, and Lawrence Lodge, No. 4, Independent Order of Odd Fellows, *Appellants*, v. Glen W. Dickinson, the Midland Theatre and Realty Company et al., *Appellees*.

(278 Pac. 730.)

Opinion filed July 6, 1929.

*J. B. Wilson* and *E. H. Beck*, both of Lawrence, for the appellants.

*Arthur Miller* and *David L. Sheffrey*, both of Kansas City, Mo., for appellee Midland Theatre and Realty Company; *John J. Riling* and *Edward T. Riling*, both of Lawrence, for appellee Glen W. Dickinson.

The opinion of the court was delivered by

Hopkins, J.: The action was one for damages alleged to have been caused the plaintiffs by defendants conspiring together to control and monopolize the picture-show and theater business of the city of Lawrence. Demurrers to the petition were sustained, and the plaintiffs appeal.

The plaintiffs are the Lawrence Lodge of Independent Order of Odd Fellows, a corporation, and its trustees. The defendant Dickinson operates several moving-picture theaters in the city of Lawrence. The defendant Midland Theatre and Realty Company is a foreign corporation with license to transact business in this state.

The lodge owns two lots on Vermont street. On October 2, 1926, the plaintiffs entered into a written lease with the defendant Midland Theatre and Realty Company, wherein it was agreed that the plaintiffs would construct a modern, up-to-date theater, which the Midland Theatre and Realty Company agreed to equip and operate for a period of ten years. The lease provided that the lodge should construct the theater portion of the building according to plans and specifications suitable for a theater, and in this respect it set out

with much detail how it should be constructed. The contract contained the following provisions among others:

"This lease may be assigned or the property sublet by the lessee for any purpose not in conflict with the business of other tenants then occupying space in·said building, but no such assignment or subletting shall ·release the lessee named herein unless the lessor shall give consent in writing to such assignment or subletting. . . .

"The parties to this lease agree that the covenants and agreements herein contained shall be binding upon their respective successors and assigns. . . .

"First parties agree to warrant and defend the title to said property and that the same is free and clear of any encumbrance, and to comply with all laws and ordinances affecting the building of which the leased premises are a part, so that second party, on performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said premises for the purpose herein provided, for the term aforesaid and any extension thereof.

"Nothing herein contained shall be construed so as to require the lessee to operate said theater continuously, and the failure to operate said theater and/or motion pictures . . . shall not be construed as a breach of this lease by the lessee so long as the lessee shall have complied with all other provisions hereof."

Thereafter the Midland Theatre and Realty Company assigned the lease to the defendant Dickinson. The assignment contained these provisions:

". . . Whereas, All of the obligations of the lessee under said lease, up to the date of this assignment, have been fulfilled, and all covenants and agreements contained in said lease to be kept and performed by the lessee have been fully performed and complied with; and

"Whereas, Glen W. Dickinson has offered and agreed to purchase said lease, and Midland Theatre and Realty Company has agreed to sell to Glen W. Dickinson all of its right, title and interest in and to said lease.

"Now, therefore, in consideration of the sum of one dollar ($1) and other valuable consideration to it in hand paid, the receipt of which is hereby acknowledged, said Midland Theatre and Realty Company does by these presents sell, convey, assign and transfer unto said Glen W. Dickinson, his heirs and assigns, the aforesaid lease, executed as aforesaid, dated October 2, 1926, and does hereby sell, convey, assign and transfer unto Glen W. Dickinson all of its right, interest and privileges in and to said lease, or thereunder, or in any wise appertaining thereto, together with any and all interest of ·the grantor therein of every kind and nature in the premises described in said lease; and in the improvements erected and to be erected thereon.

"It is further agreed and understood by and between the parties that Glen W. Dickinson shall and does hereby consent and agree that he will specifically and expressly assume all of the obligations and engagements of the lessee under said lease to be kept and performed by the lessee therein, and agrees that he will comply with and be bound by all of the said covenants and obligations, and that he will promptly and fully comply with each obligation to be per-

formed by the lessee named in said lease, and that he will fully protect, indemnify and save harmless Midland Theatre and Realty Company, as lessee under said lease, from and against any and all costs, loss, damage or other liability as lessee under said lease."

Specific allegations of the petition are that the defendant Dickinson owns and operates four of the five theaters in Lawrence; that it is and has been at all times his announced, avowed and determined purpose to obtain and preserve control of the theater business in the city of Lawrence, to the end that he may entirely stifle and prevent any and all forms of competition in that business. The petition contains no allegation that the plaintiffs have complied with their part of the contract to construct the theater, or that they have ever tendered the building to the defendant for furnishing or occupancy. It contains no statement that Dickinson's alleged coconspirators retained any interest or profit in his business or that any of his alleged coconspirators received or were entitled to receive any benefits or gains whatsoever as a result of the assignment of the lease other than the direct profit made by the assignment itself. The complaint is that Dickinson purchased an outright assignment of a lease from the Theatre and Realty Company.

The petition alleges that plaintiffs "did let and lease to said defendant for the period and under the terms and conditions . . . stated, the real property above described, and agreed to construct thereon a modern, up-to-date theater, which the defendant, the Midland Theatre and Realty Company, agreed to equip and operate for the period named in said lease." Plaintiffs in their brief say: "The petition further sets forth that plaintiffs agreed to construct and the defendant, Midland Theatre and Realty Company, agreed to equip and operate a modern up-to-date theater upon said property." However, as above noted, the petition contains no allegation that the plaintiffs have constructed the theater, nor any allegation of a waiver by defendants of plaintiffs' performance of this part of the contract. The lease contained a stipulation that the building should be completed on or before December 1, 1927. While the point is not argued in the briefs and need not be decided here, we are doubtful whether plaintiffs have stated a cause of action without having alleged performance on their part of the contract, or an excuse for nonperformance. It is a general and reasonable rule that a contract must be performed according to its terms before a party can have any right of action thereon. (See 6 R. C. L. 951, 966, 997.)

There was no allegation of a repudiation of the contract nor any of its terms by the assignee. On the other hand, he agreed that he would comply with and be bound by all of its covenants and obligations, so we have here no allegation of conduct on the part of the lessee or its assignee which would furnish excuse for nonperformance of the contract by the plaintiffs. (See 6 R. C. L. 1012.) It may be observed that the assignment of the lease was not attached to and made a part of plaintiffs' petition, but the record discloses that it was filed in the office of the register of deeds and was a matter of record long before the filing of this action, and that it was before the trial court while considering the demurrers to plaintiffs' petition. Under all the circumstances, do the allegations of a trust and combine state a cause of action? We think not. The essential element of a trust, pool, combine or monopoly, such as are prohibited by law, is a combination of two or more persons, each retaining an interest in the combination. If we are to test the plaintiffs' petition by its specific allegations and by the terms of the assignment, it rather clearly appears that the only participation the Theatre and Realty Company had in the entire transaction was to lease the property for its own use from the plaintiffs and then sell and assign its rights under that lease to the defendant Dickinson, without reserving to itself any interest therein. We do not understand that the statute prohibiting monopolies or combinations in restraint of trade prevents the individual or corporation from selling its property or holdings to another individual or corporation, or that one may not purchase or acquire the business, property or holdings of another.

In *Cincinnati Packet Co. v. Bay*, 200 U. S. 179, it was held that a contract for the sale of vessels (even if they were engaged in interstate commerce), withdrawing them from business for a specified period, was not unlawful. The court said:

"A contract is not to be assumed to contemplate unlawful results unless a fair construction requires it upon the established facts. . . . The withdrawal of the vendors from opposition for five years is the ordinary incident of the sale of a business and good will." (p. 184.)

In *Camors-M'Connell Co. v. M'Connell*, 140 Fed. 412 (C. C.), it was said:

"A contract by which a person sells his property and good will to another cannot be repudiated on the ground that the purchaser acquired the prop-

erty for the purpose of obtaining a monopoly of the business and in pursuance of an illegal combination in restraint of trade." (Syl. ¶ 2.)

A trust is declared to be "a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them, for either, any or all of the following purposes," etc. (R. S. 50-101.) The petition states that Dickinson desired to get control of the theater business in the city of Lawrence and acquire from the Theatre and Realty Company the lease in question. The allegation shows that the statute referred to was not violated, for the reason that there was no combination of capital, skill or acts by two or more persons or corporations, or associations of persons, for the purposes to which reference is made. That is to say, Dickinson purchased this lease from the Theatre and Realty Company; the company retained no interest therein; it retained no right, control or supervision over the business; it will derive no benefit therefrom. The statute specifies a combination and presupposes a conspiracy or plan between two or more persons, each of whom retains an interest in the combination effected before a trust can result. In *Davis v. A. Booth & Co.*, 131 Fed. 31 (C. C. A. 6th C.), it was said:

"There is a clear distinction, which seems to be lost sight of in the argument here, between the aggregation of properties by purchase when the seller no longer retains an interest in the property, and a combination of owners and properties under one management, where each owner's interest is continued in the combination. . . . We think that the intent which made the contract or combination unlawful was one in which both parties participated, and that the act was not intended to comprise a case where there was a sale and purchase of property, after which the seller should have no interest in the property and therefore would have no intent as to its further use." (p. 37.)

The statutes of Missouri prohibit any corporation from creating or entering into any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual or any other person or association of persons to regulate or fix prices or maintain prices when regulated and fixed, but—

"The prohibition to fix and maintain the price of an article does not include a prohibition against one manufacturing company selling out its business to another. If that were true, since this statute applies alike to corporations, individuals and partnerships, it must follow that it also prohibits one individual from selling the assets of his business to another engaged in producing a like article." (*State ex inf. v. Continental Tobacco Co.*, 177 Mo. 1, syl. ¶ 2. See, also, *State ex inf. v. International Harvester Co.*, 237 Mo. 369.)

In *Barrows v. McMurtry Mfg. Co.*, 54 Colo. 432, there was a contract for the sale of an entire stock in trade and the good will of a plate-glass company, of which the defendant was president and the largest stockholder. There was a covenant that the sellers would not for ten years engage directly or indirectly in any such business in the state, or accept employment with or work for any house engaged in such business, or invest any money in or become stockholders or directors in any company carrying on such business in the state. It was said:

" 'The modern doctrine is well-nigh universal that when one engaged in any business or occupation sells out his stock in trade and good will or his professional practice, he may contract with the purchaser and bind himself not to engage in the same vocation in the same locality for a time named, and he may be enjoined from violating this contract.' (Beach on Modern Law of Contracts, § 1575.)" (p. 141.)

Plaintiffs cite many cases which in our opinion have no application to the alleged facts. They especially rely on *Love et al. v. Kozy Theatre Company*, 193 Ky. 336, a case where the owners of four principal moving-picture shows conspired together and operated under the management of an interlocking directorate. It is apparent that case has no application to the facts under consideration here.

Contentions that the petition sets out facts constituting causes of action for fraud under the common law cannot be sustained and require no elucidation. We think the trial court comprehended the allegations of the petition and properly sustained the demurrers thereto.

The judgment is affirmed.