### LOEWE et al. v. LAWLOR et al.

(Circuit Court, D. Connecticut. December 7, 1906.)

#### No. 538.

MONOPOLIES—COMBINATION IN RESTRAINT OF INTERSTATE COMMERCE—BOYCOTT —TRADE UNIONS.

The action of the members of a labor union in attempting to compel a hat manufacturer to unionize his factory by leaving his employment and preventing others from taking employment therein, and also, with the assistance of the members of affiliated organizations, by declaring a boycott upon his goods in other states into which such goods have been shipped for sale at retail, does not have such relation to interstate commerce as to constitute a combination or conspiracy in restraint of such commerce in violation of the Sherman anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]).

At Law. On demurrer to complaint.

See 142 Fed. 216.

Davenport & Banks, for plaintiffs.

John K. Beach, John H. Light, De Forest & Klein and Howard W. Taylor, for defendants.

PLATT, District Judge. Some of the grounds of demurrer are general, attacking the entire complaint, and others are special, affecting only certain portions which are said to be irrelevant or evidential. It is with the former class that we are at this moment particularly concerned.

The complaint, stripped to the bone, sets forth, in substance, the following situation: The defendants are members of a local union in Danbury, Conn., which is a subordinate branch of the United Hatters of North America, which embraces several states and many members, and is, in its turn, subordinate to the American Federation of Labor, which embraces more states and more members. The defendants, by reason of such membership, were enabled to put into operation certain means to accomplish their purpose, and to such means they resorted with vigor and effect. They undertook thereby to compel the plaintiffs, against their will, to unionize their factory. Their associates, with their assistance, had prior thereto employed similar means toward divers factories in other states, and had succeeded. The defendants paraded such successes before the plaintiffs, and a threat to treat them in the same way was one of the means which they employed to coerce the plaintiffs into yielding to their demands. They then withdrew from plaintiffs' employment, and tried with considerable success to prevent others from working for them. With the help of their associates in the larger bodies to which they were affiliated, they declared a boycott upon hats

made by plaintiffs which were found in the hands of plaintiffs' customers in other states, notably in California and Virginia. In such action they took advantage of the absence from plaintiffs' hats of the union label, which by the state law of Connecticut the United Hatters were authorized to affix to hats made under the supervision of their members. In these ways they caused the plaintiffs a great deal of damage, and (according to the complaint) limited and restrained plaintiffs' interstate trade in hats.

It must be obvious from the foregoing recital that the defendants by the means therein described sought to curtail, and, if possible, destroy, the plaintiffs' production of hats at home, and, with the assistance of their friends, to curtail, and, if possible, destroy, the distribution of such product after it had become settled into the stock of goods in the hands of plaintiffs' customers in other states. There is no allegation which suggests that the means of transporting plaintiffs' product, or the product itself while being transported, were touched, handled, obstructed, or in any manner actually interferred with. There is no allegation that the defendants are in any way engaged in interstate commerce.

The argument for the plaintiffs is that by entering into a scheme to curtail the production at home, and the distribution by customers abroad, the defendants have formed a combination to limit and restrain plaintiffs' trade between the two points, which is interstate trade, and that such restraint is the direct, positive, and inevitable result of the general scheme. The manufacture of the hats before they leave the factory in Danbury is not interstate commerce, nor are the hats themselves up to that time the subject of interstate commerce. The distribution of the hats from the hands of the customers in other states to the ultimate consumer is not interstate commerce, nor are the hats themselves during such distribution the subject of interstate commerce.

The real question is whether a combination which undertakes to interfere simultaneously with both actions is one which directly affects the transportation of the hats from the place of manufacture to the place of sale. It is not perceived that the Supreme Court has as yet so broadened the interpretation of the Sherman act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) that it will fit such an order of facts as this complaint presents. What it may do, if the matter comes before it, is, in my judgment, very uncertain. If the demurrer, in so far as it attacks the complaint as a whole, shall be overruled and the defendants put to their answer, a jury trial must follow in orderly sequence, and after a verdict the end would still be far away. A contested trial might consume weeks of time, and the expense, both to court and parties, would be enormous. It is deemed wise, for these reasons, to sustain the demurrer, and in this situation it is hoped that the court may be pardoned for not entering into an analysis of the contentions put forth by the opposing parties. Such contentions and the independent thoughts which they aroused were necessarily examined with care, in order that this present conclusion could be reached, and if, in making such examination, a further and final conclusion was reached, it would serve no useful purpose to make

it known at this juncture. If the matter shall come back to me for further action, observations upon the questions advanced by the special grounds of demurrer would be gratefully read, and might tend to avoid unreasonable delay and expense at a later stage of the proceedings.

Let the complaint be dismissed.