### WHEELER–STENZEL CO. v. NATIONAL WINDOW GLASS JOBBERS' ASS'N.

(Circuit Court of Appeals, Third Circuit. February 28, 1907.)

No. 63.

1. MONOPOLIES—CONTRACTS AND COMBINATIONS IN RESTRAINT OF INTERSTATE COMMERCE—COMBINATIONS PROHIBITED.

A declaration alleged that defendant corporation was engaged in purchasing and contracting for the purchase of window glass from the manufacturers for certain named jobbers and wholesale dealers doing business in different states, who owned practically all of defendant's stock and

controlled it; that such dealers comprised over 75 per cent. of all those in the United States, and sold more than 75 per cent. of the window glass sold therein; that up to a certain date they were uncombined, and competed freely with each other and with other wholesale dealers, but that on such date defendant entered into a combination and agreement with them and with a manufacturer which owned and operated factories in different states and manufactured 70 per cent. of all the window glass made in the United States, by which defendant and such dealers agreed to buy window glass from no other manufacturer unless at materially lower prices, and such manufacturer agreed to sell to no other dealers, except at higher prices than it charged them; that such agreement further limited the quantity of window glass to be purchased by each of such dealers to such as should be arbitrarily fixed by defendant and the manufacturer, and also gave them the power to arbitrarily fix excessive and unreasonable prices which were to be charged retail dealers, which prices such wholesale dealers agreed to observe under penalty of fines to be assessed against and paid by them; that it further restricted and limited the territory within which each of such dealers should sell to retail dealers, the object and effect of such combination and agreement being to restrain interstate commerce in window glass, to destroy competition therein, and to practically monopolize the same, especially in the better grades, which were practically all made by such manufacturer. *Held*, that the declaration charged a contract or combination in restraint of interstate commerce, in violation of the Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202], which, as construed by the Supreme Court, makes unlawful any contract or combination in restraint of such trade or commerce, and not merely those which are in unreasonable restraint of trade and therefore illegal at common law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Monopolies, § 13.]

**2.** SAME—RIGHT OF ACTION FOR DAMAGES.

A contract or combination in restraint of interstate commerce, prohibited by Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202], is not merely illegal in the sense that it is not enforceable, but is per se unlawful, and one who is harmed in his business or property by such a contract or combination has suffered a legal injury, within the meaning of section 7 of the act, and is by such section given a right of action therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Monopolies, § 18.]

**3.** SAME—PLEADING.

Where a declaration sufficiently charges a contract or combination on the part of defendants in restraint of trade and commerce among the states, in violation of Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202], general allegations showing that the result of such contract or combination was to deprive plaintiff of customers, and prevent it from making a profit in its legitimate business as theretofore, are sufficient to support an action for treble damages, under section 7 of the act.

[Ed. Note.—Rights and liabilities of parties contracting with trusts or combinations in restraint of trade, see note to Chicago Wall Paper Mills v. General Paper Co., 78 C. C. A. 612.]

In Error to the Circuit Court of the United States for the District of New Jersey.

H. P. Lindabury, for plaintiff in error.

Theodore W. Morris, Jr., for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. This suit was brought by the plaintiff in error in the court below, to recover treble damages, etc., from the de-

fendant in error, under section 7 of the act of Congress, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," approved July 2, 1890, commonly called the "Sherman" or "Anti-Trust" act. Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]. The first and seventh sections of this act are those with which we are here concerned, and are as follows:

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

"Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the District in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

The declaration contained two counts, one based upon an alleged combination and conspiracy in restraint of trade, contrary to the provisions of the anti-trust act, the other upon an alleged contract or agreement in restraint of trade, likewise contrary to the provisions of said act. In other respects, the two counts are the same. The first is sufficiently set forth in the margin.[1]

To this declaration, the defendant interposed a demurrer, stating the following grounds therefor:

"(1) The said plaintiff has not in the said declaration or in either of the counts of its said declaration alleged facts showing that it has been injured in its business or property by the said defendant by reason of anything forbidden or declared to be unlawful by the act of Congress of the United States referred to in the said declaration, and entitled 'An act to protect trade and commerce against unlawful restraints and monopolies,' approved July 2d, 1890.

"(2) The said plaintiff has not in the said declaration or in either of the counts of the said declaration alleged any fact or facts constituting a violation by the defendant of any provision or provisions of the said act of Congress, or any fact or facts which bring the defendant within the condemnation of, or, subject the defendant to any penalty or penalties imposed by the said act, or which in any wise rendered the defendant liable to the plaintiff for any damages.

"(3) The said plaintiff has not in the said declaration, or in either of the counts thereof, alleged any contract. combination in the form of trust or otherwise, or conspiracy made or entered into by the defendant in restraint of trade or commerce among the several states, or with foreign nations in violation of the said act of Congress.

"(4) The said plaintiff has not in the said declaration or in either of the counts of the said declaration alleged any facts showing that the defendant has monopolized or attempted to monopolize, or combined or conspired with any other person or persons to monopolize, any part of the trade or commerce among the several states or with foreign nations, in violation of the said Act of Congress.

"(5) The plaintiff has not in the said declaration or in either of the counts of the said declaration. alleged any facts showing that it has suffered any damage by reason of any of the acts or facts complained of in the said declaration.

"(6) That for the reasons and in the particulars aforesaid, the said declara-

---

[1] See note at end of case.

tion does not state facts sufficient to constitute a cause of action against the defendant."

After argument, the demurrer was sustained by the court below, upon the ground that the plaintiff had not, in its declaration, shown that it was injured or had been damaged by any of the acts of conspiracy, combination or agreement stated in the declaration, without referring to the point that the contract, combination or conspiracy set forth in the declaration was not in violation of the anti-trust act, except to say "that such argument was only incidentally made but not insisted upon." Judgment was rendered by the court sustaining the demurrer, and the writ of error thereto sued out by the plaintiff below brings the record into this court. The assignments of error may be taken as presenting the following questions:

First. Whether, as is contended by defendant in error to be true, the plaintiff fails to allege in the declaration anything forbidden or declared to be unlawful in the so-called anti-trust act, by reason of which any alleged injury or damage has resulted to itself.

Second. Whether, as is contended by defendant in error to be true, the declaration fails to allege or show any legal injury to the plaintiff, and therefore does not state a cause of action either at common law or under the statute.

Third. Whether, as is contended by defendant in error to be true, the declaration fails to state facts showing that the plaintiff sustained any damage whatever by reason of any act of the defendant.

The first of these questions confronts us at the threshold of our inquiry. If the conduct and acts of the defendant, as alleged in the declaration, do not constitute and show on their face a contract, combination or conspiracy, as denounced in the first section of the act of Congress above referred to, then the essential foundation of the action, authorized by the seventh section of said act, is wanting. Turning then to plaintiff's declaration, as set out in the record, do we find a sufficient statement of such a contract or combination? From a careful survey of this pleading, it seems very clear, that the combination or contract complained of, by its obvious scope, and by the exigency of its terms, concerned the purchase and sale of window glass between manufacturers in certain states and dealers in other and different states, which is the very definition of trade and commerce among the states. Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; Montague v. Lowry, 193 U. S. 38, 47, 24 Sup. Ct. 307, 48 L. Ed. 608.

Indeed this is not here denied. Relating, therefore as it did, to commerce among the states, was the combination or contract described and set out in the declaration, in restraint of that trade and commerce within the meaning of section 1 of the act?

The scope of this question has been much narrowed by the later decisions of the Supreme Court. In the early cases in the federal courts, the purpose of the act was held to be applicable only to those contracts which were unlawful at common law, but which require the sanction of a federal statute, in order to be dealt with in a federal court. U. S. v. Freight Ass'n, 166 U. S. 290, 327, 17 Sup. Ct. 540,

41 L. Ed. 1007. It was held, therefore, that only such combinations or contracts as were in unreasonable restraint of trade, and therefore at common law illegal, were aimed at by the statute, whose true meaning was in consonance with the language of its title, viz., "An act to protect trade and commerce against unlawful restraints and monopolies." In the case above referred to, however (U. S. v. Freight Ass'n), the Supreme Court, speaking by Mr. Justice Peckham, says: "The term" (in restraint of trade and commerce) "is not of such limited signification." Having stated that the language used in the title refers to and includes, and was intended to include, those restraints and monopolies which are made unlawful in the body of the statute, the opinion proceeds:

"Contracts in restraint of trade have been known and spoken of for hundreds of years both in England and in this country, and the term includes all kinds of those contracts which in fact restrain or may restrain trade. Some of such contracts have been held void and unenforceable in the courts by reason of their restraint being unreasonable, while others have been held valid because they were not of that nature. A contract may be in restraint of trade and still be valid at common law. Although valid, it is nevertheless a contract in restraint of trade, and would be so described either at common law or elsewhere. By the simple use of the term 'contract in restraint of trade,' all contracts of that nature, whether valid or otherwise, would be included, and not alone that kind of contract which was invalid and unenforceable as being in unreasonable restraint of trade. When, therefore, the body of an act pronounces as illegal every contract or combination in restraint of trade or commerce among the several states, etc., the plain and ordinary meaning of such language is not limited to that kind of contract alone which is in unreasonable restraint of trade, but all contracts are included in such language, and no exception or limitation can be added without placing in the act that which has been omitted by Congress."

Every contract or combination, therefore, whether reasonable or unreasonable, which directly restrains or which necessarily operates in restraint of trade or commerce among the states, is denounced and made unlawful by the act. The Supreme Court has also decided that a contract or combination, whose object or necessary result is to destroy competition in whole or in part, in trade or commerce among the states, is in restraint thereof, and therefore within the inhibition of the act. Northern Securities Co. v. U. S., 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679. In this case, the Supreme Court, by Mr. Justice Harlan, says:

"In all the prior cases in this court, the anti-trust act has been construed as forbidding any combination which, by its necessary operation, destroys or restricts free competition among those engaged in interstate commerce; in other words, that to destroy or restrict free competition in interstate commerce, was to restrain such commerce."

And it was held that such was the proper construction of the act, and that so interpreted it was within the constitutional power of Congress to enact under the commerce clause of the Constitution. The opinion then continues:

"Whether a free operation of the normal laws of competition is a wise and wholesome rule for trade and commerce, is an economic question, which this court need not consider or determine. * * * Be all this as it may, Congress has, in effect, recognized the rule of free competition, by declaring illegal every combination or conspiracy in restraint of interstate and international commerce."

It is true that, in this case, the court were dealing with what was held to be a combination between two railway companies, the necessary operation of which would tend to destroy competition between them, as to the rates at which commodities would be carried from state to state. But, if the interpretation given by the Supreme Court to the act is applicable to those who control the mere instrumentalities of interstate commerce, such as common carriers are held to be, a fortiori it is applicable to those who initiate, carry on and control that commerce itself. U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259; Addyston Pipe & Steel Co. v. U. S., 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; Swift & Co. v. U. S., 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518.

The declaration is long and somewhat redundant in phraseology and statement. Much of it is taken up with matter of inducement, as that the plaintiff was a wholesale dealer and jobber in window glass, doing business at Boston, a large part of which consisted of trade in window glass among the several states; that the defendant is and was a corporation engaged in purchasing window glass or obtaining contracts for the purchase of window glass for manufacturers in certain specified states, for certain jobbers and wholesale dealers doing business in other states and specified in a list set forth; that these wholesale dealers owned a large majority of the stock in and controlled the defendant corporation; that the American Window Glass Company, up to the time of the combination complained of, owned and operated factories in certain specified states, and sold and delivered its product to wholesale dealers in each of the states, and was thereby engaged in interstate commerce; that the plaintiff had had large dealings with the said American Window Glass Company and imported its product into Massachusetts and sold it in the New England states, where window glass is not manufactured; that the wholesale dealers specified constituted more than 75 per cent. of the jobbers and wholesale dealers in window glass in the United States, and had more than 75 per cent. of the wholesale business; and that, prior to the acts complained of, the wholesale dealers specified were uncombined, and were buying window glass in competition with each other and with other wholesale dealers, and selling such glass in open competition to retail dealers in the several states, including the New England States and New York.

The declaration then proceeds to allege:

"That on the fourteenth day of February in the year nineteen hundred and thereafter continuously until the fourth day of August, in the year nineteen hundred and three, in order unreasonably to restrain trade and commerce in window glass among the several states, and with intent to absorb and monopolize the inter-state trade and commerce in window glass, and to stifle and put an end to competition in such trade; and in order to control and restrict the output, and to control and regulate the prices of window glass manufactured and sold in and among the several states, and to increase and arbitrarily fix the prices at which window glass should be sold in trade and commerce among the several states, independent of the natural market price of such glass; and to enable the said wholesale dealers hereinabove named to obtain excessive and unreasonable prices in trade and commerce in window glass among the several states, and to enable these dealers to obtain substantially all the window glass of the best quality manufactured in the United States

and prevent all other wholesale dealers and jobbers from obtaining such glass except at unreasonable prices much higher than the prices paid by the said wholesale dealers hereinabove named, the defendant corporation combined and conspired with the American Window Glass Company and with the wholesale dealers hereinabove named, unreasonably to restrain, and in pursuance of this combination and conspiracy, did unreasonably restrain, * * * by restricting the sale of all of the glass manufactured by the American Window Glass Company to the wholesale dealers named as aforesaid, except at unreasonable prices, from two and one-half per cent. to five per cent. higher than the prices charged to these wholesale dealers named as aforesaid, by arbitrarily fixing unreasonable and excessive prices to be charged by these wholesale dealers named as aforesaid, to retail dealers in window glass throughout the United States, by restricting and limiting the quantity of window glass to be purchased by each of the said wholesale dealers hereinabove named to quantities to be arbitrarily determined by the defendant and the American Window Glass Company; by the refusal of the wholesale dealers named as aforesaid to purchase any window glass from any other manufacturer than the American Window Glass Company except at prices at least five per cent. below the prices charged by it, which lower prices were less than the cost of manufacturing such glass; by establishing rules and regulations forbidding the said wholesale dealers hereinabove named from selling window glass to other wholesale dealers at prices lower than the prices fixed under penalty of pecuniary fines to which each of the said wholesale dealers hereinabove named agreed with each other and with the defendant corporation to become liable; by mutually agreeing to refuse to purchase any window glass at any price from any manufacturer who should not close his factories and restrict the output of window glass produced by him at such times and in such manner as such restrictions of output should be arbitrarily imposed by the American Window Glass Company; and by restricting and fixing the territory within which each of the said wholesale dealers hereinabove named should sell window glass to retail dealers, so that none of them should sell to any retail dealer in any other territory except under arbitrary restrictions imposed by the defendant corporation."

We think, in the language quoted, there is sufficiently averred the existence of a contract or combination, to which the defendant was a party, which, by its necessary operation, was in restraint of interstate trade and commerce in window glass. It was obviously designed to destroy or minimize competition between certain wholesalers and jobbers in window glass, alleged to be 75 per cent. of the whole number so engaged in the United States, and, in the language of the Supreme Court, "to destroy or restrict free competition in interstate commerce is to restrain such commerce." It is argued with much force and ingenuity by the defendant in error, that the combination set out in the declaration, was only an agreement by which a certain number of wholesalers were to trade exclusively with a certain manufacturer, with the reciprocal understanding that the manufacturer was to sell to no one else, except at a price higher than that paid by the parties to the contract; that this was, in effect, nothing more than an agreement to sell to one person or to several at a price advantageously lower than the general price, on condition that such person or persons would buy exclusively from the manufacturer so agreeing. In other words, the American Window Glass Company had the right to select its customers and charge one price to one and another price to another. It had the right to offer certain inducements to certain customers in exchange for their exclusive trade. And it had the right to do all or any of these things. But it is always to be borne in mind, in considering arguments of this kind, that the act of Congress has

made, and was intended to make, illegal, many sorts of contracts and agreements that prior thereto were not only legal, but were regarded as meritorious and beneficial, and has materially restricted the area within which freedom of contract may be exercised.

There is something more, however, set forth in the declaration affecting the character and operation of this contract. Prices to retail dealers were to be arbitrarily fixed by those wholesale dealers, to which prices they were all required to conform. The quantity of glass to be purchased by each of said wholesale dealers was to be arbitrarily determined by the American Window Glass Company, and they were to be prohibited from purchasing from any manufacturer who should not close his factories and restrict the output of glass when and as required so to do by the American Window Glass Company. These stipulations clearly tended toward the creation of a monopoly, and if adhered to and carried out, manifestly restricted the scope of competition in the commodity referred to. It may be quite true, that such an agreement would have been valid at common law, or if invalid as to the parties, would not have been illegal, but the act of Congress has affected it with illegality, so far as the trade or commerce restrained by it is interstate in its character. We conclude, therefore, that the contract or combination set out in the declaration is one in violation of the first section of the anti-trust act, and that an action properly accrues under the seventh section to any one who has been injured in his business or property by reason thereof.

We come now to the second question raised by the assignments. It is strenuously insisted by the learned counsel for the defendant, that unless the injury to plaintiff's business or property, alleged in the declaration and for which he brings suit, is a legal injury, plaintiff does not state a cause of action under the statute. At great length, both in oral argument and in defendant's brief, it has been urged that the word "injured," in the seventh section of the statute, is used in a technical sense, and imports an injury as recognized at common law, that is, as a harm inflicted by commission of a wrong or tort; that injury and damage are different legal concepts, and the one should not be confounded with the other. Abstractly, this is all true, and the phrase, "damnum absque injuria," so often recurring in legal discussion, serves to emphasize the distinction on which defendant's counsel insists. In support of the proposition, that no legal injury resulting to the plaintiff, by reason of defendant's violation of the anti-trust law, has been or can be alleged by plaintiff, it is contended that at common law, agreements in restraint of trade, however clearly established, unless unreasonable in themselves, were not illegal, and if no unlawful means were practiced to carry them into execution, no action accrued to one who claims to have been harmed thereby. This is the doctrine of Mogul Steamship Co. v. McGregor (as finally decided in the House of Lords, in December, 1891) L. R. App. Cas. (1892) p. 25. It will be remembered that that celebrated case grew out of the formation, by a number of ship owners, of an association, to secure, at profitable rates exclusively for themselves, the carrying trade from Chinese ports to Europe. This was to be accomplished, in part, by a rebate of five per cent. on freights to all shippers who

shipped exclusively with members of the association, it being announced that any one, even though usually a shipper in ships of the association, who employed the ship of any outside owner, should not be entitled to the rebate during a certain period. It was also agreed that the association should send ships to any port where the ships of outside owners were seeking cargoes, and by lowering rates to an indefinite extent, even though cargoes had to be carried at a loss, drive out of business the competing vessels. One of such competing owners brought his action against the members of the association, on the ground that their agreement, being in restraint of trade, was an unlawful one, and that therefore a private injury suffered by plaintiff, by reason thereof, was actionable. The facts involved were not unlike those in the present case. The Lord Chancellor and the judges were unanimous in the judgment delivered by them to the House of Lords. They all concurred in the opinion that, though the contract was in restraint of trade, and might be illegal in the sense that it was not enforceable at law—was invalid inter sese—it was not unlawful or illegal in the stricter sense of those words, and that no action accrued to one who suffered loss thereby, unless the means used to enforce the agreement was itself unlawful; such as fraud, misrepresentation, physical compulsion, or the persuading of another to break a binding contract. The following language used by Lord Chancellor Halsbury, in delivering his opinion in the House of Lords, will exhibit in part the reasoning upon which plaintiff was held to have suffered no injury or actionable loss or harm:

"A totally separate head of unlawfulness has, however, been introduced by the suggestion that the thing is unlawful because in restraint of trade. There are two senses in which the word 'unlawful' is not uncommonly, though I think somewhat inaccurately used. There are some contracts to which the law will not give effect; and therefore, although the parties may enter into what, but for the element which the law condemns, would be perfect contracts, the law would not allow them to operate as contracts, notwithstanding that, in point of form, the parties have agreed. Some such contracts may be void on the ground of immorality; some on the ground that they are contrary to public policy; as, for example, in restraint of trade; and contracts so tainted the law will not lend its aid to enforce. It treats them as if they had not been made at all. But the more accurate use of the word 'unlawful,' which would bring the contract within the qualification which I have quoted from the judgment of the Exchequer Chamber, namely, as contrary to law, is not applicable to such contracts."

He adds:

"It has never been held that a contract in restraint of trade is contrary to law in the sense that I have indicated."

Lord Bramwell states his position thus:

"I think, upon the authority of Hilton v. Eckersley, 6 E. & B., 47, and other cases, we should hold that the agreement was illegal, that is, not enforceable by law. But that is not enough for the plaintiffs. To maintain their action on this ground, they must make out that it was an offence, a crime, a misdemeanor. I am clearly of opinion it was not. Save the opinion of Crompton, J. (entitled to the greatest respect, but not assented to by Lord Campbell or the Exchequer Chamber), there is no authority for it in the English law."

It was held, therefore, that the plaintiff had suffered no legal injury, and that no action would lie. The much argued and interesting case

of Allen v. Flood, L. R. A. C. (1898) 1, though differing in its facts from the case at bar, illustrates to some extent the general doctrine, that, however harmful to others individual or combined action may be, if it is not unlawful, the damage or harm so inflicted does not constitute legal injury at common law.

But it does not follow, as is argued by defendant that it does, that, because at common law contracts and combinations in restraint of trade were only illegal in the sense of being unenforceable, as being contrary to public policy, and that private wrongs cannot be predicated thereon, proper legislative authority has not, by making such contracts and combinations absolutely unlawful, created a right of private action in one who has suffered in business or property thereby, even though such damage or loss would not have been actionable at common law. There is the implication in all the judgments delivered in Mogul Steamship Co. v. McGregor, supra, that it is because agreements in restraint of trade are not per se unlawful, that, apart from unlawful means in carrying them out, no private rights of action can be predicated thereon, but that if such combinations were illegal, in the strict sense of that word, and constituted a public wrong, whether by common law or by statute, one who incurred substantial loss thereby suffered a legal injury for which a private action would lie. Of course the result must be the same, whether the public offense or misdemeanor exists by virtue of common law or statute. In either case, it exists by law. The defendant argues that, although the first six sections of the statute provide that such contracts or combinations shall not only be illegal and void, as they were at common law, but also constitute crimes against the United States, yet there is absolutely nothing in them referring in any way to private rights or private remedies, and that section seven, while it gives a private right of action, does so only where violation of the preceding sections results in a legal injury at common law to the plaintiff, and that nothing in this section can possibly be construed into making such contracts and combinations themselves wrongs or torts against the person who suffers harm thereby; that it is only where there has been such an injury, some tort or breach of contract resulting from the public offense, that the party injured may recover the three fold damages authorized in section seven. But so far as the right of action is concerned, that must be based upon an individual legal injury just as at common law. There is an obvious fallacy in this reasoning. Private actionable injury could not be predicated on such combinations in restraint of trade, as were considered in Mogul Steamship Company v. McGregor, for the reason, as we have seen, that such agreements were not criminal or unlawful by the common law; but such combinations, so far as they affect interstate commerce, are both unlawful and criminal by the statute law of the United States. It would seem, therefore, that the conclusion is obvious and unavoidable, that the private right of action in the latter case must be commensurate with the extent of the illegality thus by law established. In a common-law jurisdiction, express statutory provision of a right of action for damage resulting from a violation of law, would not have been necessary. Whether because of the want of common-law jurisdiction in federal courts, or

whatever may have been the reason for so doing, Congress has seen fit expressly to create a private right of action for one injured by rea-, son of the violation of the act. The principle that every man has a right to insist that no provision of any law shall be violated, so as to work peculiar harm to him (with, perhaps, the qualification that the harm resulting from the breach of a statutory duty must be of the ' kind which the statute was intended to prevent), is well stated by Bishop on "Non-Contract Law," § 132:

"Whenever the law, a statute, a municipal by-law, or any other law, imposes on one a duty, if of a sort affecting the public within the principles of the criminal law, a breach of it is indictable, and a civil action will lie in favor of any person who has suffered especially therefrom."

. It is manifestly the correct understanding of the seventh section of the act, that where a man is harmed in his business or property by a violation of the act, he has suffered a legal injury and is entitled to his action therefor. All this seems to have been recognized in the very recent opinion of the Supreme Court of the United States, in Chattanooga Foundry and Pipe Works et al. v. City of Atlanta, 27 Sup. Ct. 65, 203 U. S. 390, 51 L. Ed. ——. In speaking of the plaintiff below, which had brought its action under section seven of the act (the facts being very like those of the present case) Mr. Justice Holmes, who delivered the opinion of the court, says:

"It" (meaning the plaintiff) "was injured in its property, at least, if not in its business of furnishing water, by being led to pay more than the worth of the pipe. A person whose property is diminished by a payment of money wrongfully induced, is injured in his property."

Little need be said as to the third point made by the defendant, viz., that no facts were alleged, showing that the plaintiffs sustained any damage whatsoever, by reason of any act of the defendant. Examination of the declaration in this regard does not sustain the defendant's contention. The gravamen of defendant's criticism is, that sufficient facts are not alleged to show that plaintiffs could not have purchased all the glass it required from the American Window Glass Company. But plaintiff has alleged the contrary in its declaration, and is not required to plead the evidence in support thereof. The same may be said as to the criticism, that there is nothing to show that it could not have procured all the glass it required, and have sold such glass to its customers at the same price as before, nor is it necessary, as urged by defendant, that plaintiff should allege that defendant, or the dealers represented by defendant, attempted to deprive it of its business, by offering lower prices to its customers. It is enough, that plaintiff charges that the result of the illegal combination was to deprive it of customers and prevent its making a profit upon its legitimate business, as theretofore existing. If, as we have found, a contract or combination in restraint of trade and commerce among the states has been sufficiently charged, we think the plaintiff has met the requirements of the law in the declaration, by the general statement made of damage to itself by reason thereof. The declaration might have been more specific, but if the illegal contract or combination has been stated with the requisite clearness, the statements of

the damage are not too general to lay ground for the evidence, if any there be, of the particulars of which it consisted. It is hard to see how the plaintiff should be required to be more specific in its allegation, that the effect of the illegal combination was to deprive the plaintiff of its entire business in the kind of window glass which its customers chiefly require, and to deprive it of all its customers whose names are given in the declaration, and of their trade, which, as already alleged, was interstate in its character, or that by means of said combinations, the plaintiff's business was destroyed and it rendered insolvent. As matter of pleading, these allegations are sufficiently clear and precise, and with the evidence to be offered in their support we are not now concerned.

For the reasons stated, we think the judgment below must be reversed.

### NOTE.

The National Window Glass Jobbers' Association, a corporation duly organized and existing under and by virtue of the laws of the state of New Jersey, a citizen of said state and resident of said district, the defendant in this suit was summoned in an action in tort to answer unto the plaintiff, the Wheeler Stenzel Company, wherein the plaintiff demands three hundred thousand dollars, damages, and thereupon, the plaintiff, by Vreeland, King, Wilson and Lindabury, its attorneys, complains.

For that whereas, heretofore, to wit, on the fourteenth day of February, in the year nineteen hundred, at Boston, in the commonwealth of Massachusetts, to wit, at Jersey City, New Jersey, in said district, the plaintiff was a wholesale dealer and jobber in window glass, having its place of business at Boston, in the commonwealth of Massachusetts. A large part of its business consisted of trade and commerce in window glass among the several states. It purchased such window glass from manufacturers located and doing business in the states of Indiana, Pennsylvania, New York and New Jersey, and obtained delivery thereof to it at Boston, and sold and delivered this glass to its customers who were retail dealers doing business in the states of Maine, New Hampshire, Vermont, Rhode Island, Connecticut and New York and the commonwealth of Massachusetts. A list of these customers and their respective places of business is as follows, to wit:

(Here follows list of 33 persons, firms and corporations in 7 states.)

That the defendant is and has been from the time of its organization, a corporation engaged in the business of purchasing, or obtaining contracts for the purchase of, window glass from manufacturers in the states of Indiana, Pennsylvania, New York and New Jersey, for the benefit of certain jobbers and wholesale dealers in window glass, doing business in various states. A list of these dealers and their respective places of business, so far as known to the plaintiff, is as follows, to wit:

(Here follows list consisting of 51 persons, firms and corporations, residing and doing business in 14 different states.)

A large majority of the shares of stock in the defendant corporation was owned by the wholesale dealers named as aforesaid, who were thereby enabled to control, and did control, the defendant corporation. The principal part of the defendant's business from the fourteenth day of February in the year nineteen hundred to the fourth day of August, in the year nineteen hundred and three, was the making of contracts for the benefit of these wholesale dealers by which the American Window Glass Company agreed to sell and deliver to these wholesale dealers window glass in large quantities, to be received and paid for them respectively, and to be transported by rail from the several factories of the American Window Glass Company to the places of business of these dealers. In accordance with such contracts between the defendant corporation and the American Window Glass Company, large quantities of window glass, amounting to more than two million boxes were sold in each

year during this period by the American Window Glass Company and transported by rail to these dealers at their respective places of business.

That on the said fourteenth day of February in the year nineteen hundred, the American Window Glass Company was and has ever since continued to be, a corporation organized under the laws of Pennsylvania, engaged in manufacturing window glass. Prior to that date it has acquired and has ever since owned and operated window glass factories and plants, located and doing business in the states of Indiana, Pennsylvania, New York and New Jersey, and throughout the period during which the acts complained of occurred, produced a large proportion, exceeding seventy per cent. of the window glass manufactured in the United States, and sold and delivered the glass manufactured by it to wholesale dealers in each of the states, and was engaged in trade and commerce in window glass among the several states.

That window glass is a staple article of trade and commerce among the several states. The window glass used in the commonwealth of Massachusetts and the states of Maine, New Hampshire, Vermont, Rhode Island and Connecticut is not manufactured in those states, but is purchased in and transported from other states, and a large part of it, exceeding seventy per cent., is purchased from the American Window Glass Company.

That prior to the fourteenth day of February, in the year nineteen hundred, the plaintiff and its predecessors in business had for many years purchased large quantities of window glass from the American Window Glass Company and its predecessors in its business, exceeding two hundred thousand boxes in each year and imported the glass so purchased into the commonwealth of Massachusetts, and sold it in that commonwealth and in the states of Maine, New Hampshire, Vermont, Rhode Island, Connecticut and New York, to its customers, hereinabove named, and had an established business of interstate trade and commerce in so purchasing window glass and selling it to its customers in other states, and realized large gains and profits thereby, to wit, the sum of one hundred thousand dollars in each year.

That the wholesale dealers named as aforesaid constituted more than seventy-five per cent. of the jobbers and wholesale dealers in window glass in the United States and did more than seventy-five per cent. of the wholesale business in window glass in the United States. The American Window Glass Company manufactured and sold practically all the window glass of the better grades manufactured in the United States and controlled the production and sale to wholesale dealers of glass of those grades. Prior to the acts of the defendant herein complained of, a very large proportion of the glass bought and sold by the plaintiff was glass of those grades, and it required in its business large quantities of glass of those grades for sale and delivery to its customers, hereinabove named, and was unable to obtain any considerable quantity of glass of those grades except from the American Window Glass Company or its predecessors in its business; and the plaintiff and its predecessors in its business had purchased large quantities of window glass exceeding two hundred thousand boxes per year from the American Window Glass Company and its predecessors in its business, a large part, exceeding seventy-five per cent. of which was of the better grades manufactured in the United States only by the American Window Glass Company.

That prior to the acts herein complained of, the said wholesale dealers hereinabove named were uncombined and were purchasing window glass in competition with each other and with the plaintiff and other wholesale dealers, and selling such glass in open competition to retail dealers in the several states, including Massachusetts, Maine, New Hampshire, Vermont, Rhode Island, Connecticut and New York and the American Window Glass Company and other manufacturers were selling window glass to the plaintiff and to the said wholesale dealers named as aforesaid and to all other wholesale dealers, as competing jobbers and by separate contracts, and the American Window Glass Company and all other manufacturers of window glass were competing with each other for the trade of the plaintiff and the said wholesale dealers hereinabove named and of all other wholesale dealers.

That on the fourteenth day of February in the year nineteen hundred and thereafter continuously until the fourth day of August, in the year nineteen hundred and three, in order unreasonably to restrain trade and commerce in

window glass among the several states, and with intent to absorb and monopolize the inter-state trade and commerce in window glass, and to stifle and put an end to competition in such trade; and in order to control and restrict the output, and to control and regulate the prices of window glass manufactured and sold in and among the several states, and to increase and arbitrarily fix the prices at which window glass should be sold in trade and commerce among the several states, independent of the natural market price of such glass; and to enable the said wholesale dealers hereinabove named to obtain excessive and unreasonable prices in trade and commerce in window glass among the several states, and to enable these dealers to obtain substantially all the window glass of the best quality manufactured in the United States and prevent all other wholesale dealers and jobbers from obtaining such glass except at unreasonable prices much higher than the prices paid by the said wholesale dealers hereinabove named, the defendant corporation combined and conspired with the American Window Glass Company and with the wholesale dealers hereinabove named, unreasonably to restrain, and in pursuance of this combination and conspiracy, did unreasonably restrain, from the fourteenth day of February, nineteen hundred, to the fourth day of February, nineteen hundred and three, trade and commerce in window glass among the several states, including the states of Massachusetts, Maine, New Hampshire, Vermont, Rhode Island, Connecticut and New York, by restricting the sale of all of the glass manufactured by the American Window Glass Company to the wholesale dealers named as aforesaid, except at unreasonable prices, from two and one-half per cent. to five per cent. higher than the prices charged to these wholesale dealers named as aforesaid, by arbitrarily fixing unreasonable and excessive prices to be charged by these wholesale dealers named as aforesaid, to retail dealers in window glass throughout the United States, by restricting and limiting the quantity of window glass to be purchased by each of the said wholesale dealers hereinabove named to quantities to be arbitrarily determined by the defendant and the American Window Glass Company; by the refusal of the wholesale dealers named as aforesaid to purchase any window glass from any other manufacturer than the American Window Glass Company except at prices at least five per cent. below the prices charged by it, which lower prices were less than the cost of manufacturing such glass; by establishing rules and regulations forbidding the said wholesale dealers hereinabove named from selling window glass to other wholesale dealers at prices lower than the prices fixed under penalty of pecuniary fines to which each of the said wholesale dealers hereinabove named agreed with each other and with the defendant corporation to become liable; by mutually agreeing to refuse to purchase any window glass at any price from any manufacturer who should not close his factories and restrict the output of window glass produced by him at such times and in such manner as such restrictions of output should be arbitrarily imposed by the American Window Glass Company; and by restricting and fixing the territory within which each of the said wholesale dealers hereinabove named should sell window glass to retail dealers, so that none of them should sell to any retail dealer in any other territory except under arbitrary restrictions imposed by the defendant corporation.

The combination and conspiracy thus entered into between the defendant, the American Window Glass Company, and the said wholesale dealers hereinabove named was in restraint of trade and commerce in window glass among the several states, including the states in which the American Window Glass Company manufactured glass as herein alleged, the states in which the wholesale dealers named as aforesaid had their respective places of business, and the states of Massachusetts, Maine, New Hampshire, Vermont, Rhode Island, Connecticut and New York, and was and is forbidden and declared to be unlawful by an act of Congress of July second, eighteen hundred and ninety entitled "An act to protect trade and commerce against unlawful restraints and monopolies."

That on the fourteenth day of February in the year nineteen hundred and frequently thereafter until the fourth day of August in the year nineteen hundred and three, the plaintiff endeavored to purchase from the American Window Glass Company glass manufactured by it; but the American Window Glass Company on that date refused, and throughout said period continued to

refuse, in pursuance of the combination and conspiracy entered into by it with the defendant corporation and the said wholesale dealers hereinabove named to sell any window glass to the plaintiff except at unreasonable prices, largely in excess of the prices charged by it to the said wholesale dealers hereinabove named, and the plaintiff also frequently during the period named endeavored to purchase window glass from the defendant corporation; but the defendant, pursuant to the combination and conspiracy above referred to, refused, and during all this period, continued to refuse to sell any window glass to the plaintiff and the plaintiff was unable during this period to purchase any window glass from any of the said wholesale dealers hereinabove named except at the same prices charged by them to retail dealers; and, as a very large proportion of the glass dealt in by the plaintiff was of the quality and grades manufactured in the United States only by the American Window Glass Company, the plaintiff was unable to obtain glass of the quality and grades required to supply its customers, and thereby, during the period above named, lost a very large part of its trade and commerce in window glass among the several states, including the trade and custom of its customers named as aforesaid.

That the direct and immediate effect of this combination and conspiracy, during the entire period specified, was unreasonably to restrain trade and commerce in window glass among the several states, including all the states hereinbefore named, in the manner and by each of the means above stated: to restrict the output and curtail the production of window glass throughout the United States; to fix arbitrary and excessive prices charged to retail dealers, to stifle competition among the said wholesale dealers hereinabove named for the trade of retail dealers in window glass, and between the American Window Glass Company and other manufacturers of window glass for the trade of all wholesale dealers in window glass; to increase the price of glass to retail dealers and consumers; and to give the American Window Glass Company the complete control and virtual monopoly of the manufacture and give the said wholesale dealers hereinabove named a virtual monopoly of the sale and distribution of window glass manufactured in the United States, and a practically complete control and monopoly of the entire trade and commerce in window glass among the several states, including the states of Massachusetts, Maine, New Hampshire, Vermont, Rhode Island, Connecticut and New York.

That the direct and immediate effect of this combination and conspiracy upon the plaintiff during the entire period above named was unreasonably to restrain its trade and commerce among the several states by restraining its business of purchasing window glass and selling window glass to its customers named as aforesaid, in the states of Maine, New Hampshire, Vermont, Rhode Island, Connecticut and New York and the commonwealth of Massachusetts; to prevent it from purchasing window glass of the kind chiefly required in its business, except at unreasonable prices, in excess of those charged to its competitors, the wholesale dealers named as aforesaid to prevent it from obtaining any window glass of the kind chiefly required by its customers heretofore named, as all of the window glass of those grades produced in the United States was manufactured by the American Window Glass Company; to stifle and destroy competition which before had been open and unrestricted, between it and its competitors, the wholesale dealers as aforesaid and to give them the absolute control and monopoly of the trade and commerce among the several states in window glass of the grades chiefly required in the business of the plaintiff to deprive the plaintiff of its entire business and trade in the United States above named and elsewhere, in the kind of window glass principally required by its customers; to prevent it from purchasing window glass of the quality and grades required to supply its customers, except at unreasonable and excessive prices, and to deprive it of all its customers named as aforesaid, and of their trade and custom; and by all these means to destroy the business of the plaintiff and prevent it from conducting its business at a profit and to render it insolvent.