### BLUE POINT OYSTER CO. v. HAAGENSON et ux.

(District Court, W. D. Washington, S. D. November 21, 1913.)

#### Nos. 1,705–1,710.

1. SPECIFIC PERFORMANCE (§ 75*)—CONTRACTS ENFORCEABLE—CONTRACTS FOR CONTINUOUS ACTS DURING LONG PERIOD.

A court of equity will not decree specific performance of contracts by which owners of oyster beds agree to sell to the other party their entire production for a term of 20 years at a stated price per sack in the shell, with provisos that they shall sell to no one else, and respecting the quality of the oysters and the quantity which each sack shall contain when shelled, for the reason that the character of the obligations are such that continuous supervision of the court would be required during the term of the contracts, and for the further reason that complainant has a complete and adequate remedy at law; oysters of the quality named having an ascertainable market value.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 210; Dec. Dig. § 75.*]

2. EQUITY (§ 41*)—JURISDICTION—GRANTING LEGAL RELIEF.

Where a court of equity is without jurisdiction to grant the relief prayed for in a suit, it will not grant relief which may properly be obtained in an action at law.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 116–118; Dec. Dig. § 41.*]

In Equity. Suits by the Blue Point Oyster Company against B. Haagenson and Jane Doe Haagenson (whose true name is unknown), his wife, against Rasmus Matre and another, against Eli Rockey and wife, against the Olsen Oyster Company and others, against John A. Fosse and others, and against William Griener and wife. Causes transferred to law docket.

Frank H. Kelley, of Tacoma, Wash., and John M. Pipes, of Portland, Or., for complainant.

Welsh & Welsh, of South Bend, Wash., for defendants.

CUSHMAN, District Judge. Five suits are brought by complainant, an Oregon corporation, engaged in the business of buying and selling oysters, against certain citizens and residents of Washington, oyster growers, for the specific performace of certain contracts. The suits and separate contracts, upon which they are based, differ in no material respect. The contracts were all made in October and November, 1909.

The contract in one of these suits provides:

"This agreement, made and entered into this 20th day of October, 1909, between Eli Rockey of Bay Center, party of the first part, and Blue Point Oys-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ter Company, a corporation, of Portland, Oregon, party of the second part, witnesseth: That, whereas, party of the first part is the owner of certain oyster beds on Willapa Bay, state of Washington, of about 123 acres in extent, and is now engaged in cultivating and raising what are commonly known as 'native oysters;' and whereas, party of the second part is engaged in the business of dealing in and selling oysters at wholesale, and has special facilities for handling and marketing oysters in large quantities: Now therefore, party of the first part for and in consideration of the covenants and agreements hereinafter contained and to be performed by party of the second part, does hereby covenant and agree to and with party of the second part, that party of the second part shall have the sole and exclusive right to purchase all of said 'native oysters' raised and cultivated in or on said oyster beds, and the entire output and product of same, except what he shall use in and through his oyster house at South Bend, Wash.; said right and privilege to extend and continue for the period of twenty (20) years from the date of these presents.

"And party of the first part does covenant and agree to and with party of the second part, that he, party of the first part, will not during said period of twenty years either directly or indirectly sell, or offer to sell, any of said native oysters raised or cultivated in or on said oyster beds to any person, firm or corporation other than party of the second part.

"Party of the second part for and in consideration of the covenants and agreements hereinbefore contained and to be kept and performed by party of the first part, does hereby covenant and agree to and with party of the first part, that party of the second part will for the period of twenty years following from the date of these presents, purchase of party of the first part all native oysters raised or produced in or on said oyster beds now owned by party of the first part, paying therefor to party of the first part the sum of two and 75/100 dollars ($2.75) per sack of 100 pounds in shell; said oysters to be good, merchantable oysters and of standard quality, and each sack shall contain not less than eight (8) quarts of oysters, including natural juice when shelled. Provided, however, that the annual increase of yield of said beds shall not exceed ten (10%) per cent. of that of the preceding year, unless however, the parties hereto mutually agree thereto, and shall determine the extent or amount of such excess, and if the said parties cannot so mutually agree, then said increase shall never exceed said ten per cent. of the preceding year. All payments hereunder to be made on the 10th day of the succeeding month, providing statements are in three days prior.

"And it is further agreed by and between the parties that all of said oysters shall be delivered by party of the first part f. o. b. at the town of ――――, state of Washington.

"And it is further agreed and stipulated by and between the parties hereto, that if party of the second part shall fail or neglect to make prompt payment for all oysters shipped to it under this contract, then, party of the first part may at his option declare this contract terminated and the same shall be held as null and void.

"And it is further agreed that should any of the sacks of oysters be found to contain more than eight quarts of oysters then in that event all oysters in addition to the said eight quarts shall be paid for at the rate of 34⅜ cents for each and every quart over the said eight quarts.

"In witness whereof the parties hereto have hereunto set their hands and seals in duplicate the day and year first above written."

Four of the five contracts were subsequently modified, allowing the defendants to sell otherwise than to complainant until June 1, 1910. The complainant alleges that oysters, such as those produced upon the defendants' lands, at the time the contracts were made, had a market price of $2.75 per sack, and that, by the latter part of 1910, they were worth $5 per sack in the market. In June, 1910, the complainant notified each of the defendants:

"We will be ready by July 1st to handle all the oysters you will have, as per our agreement."

All of the defendants refused to furnish complainant oysters thereafter. Several, if not all, of the defendants have been selling oysters to others than complainant since June, 1910. In December, 1910, these suits were begun. Complainant alleges damage, in each suit, in excess of $2,000. The defendants admit the contracts, but contend that they were subsequently abrogated by oral agreement between the parties; that the contracts are unenforceable as against public policy, as contrary to the provisions of the first and second sections of the Sherman Act, and as void under the state Constitution prohibiting monopolies. Defendants deny complainant's allegation that it has not an adequate remedy at law.

Complainant relies upon the following authorities: Ore. Steam Nav. Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315; Fisheries Co. v. Lennen et al. (C. C.) 116 Fed. 217; Harrison v. Glucose Sugar Ref. Co., 116 Fed. 304, 53 C. C. A. 484, 58 L. R. A. 915; Robinson v. Suburban Brick Co., 127 Fed. 804, 62 C. C. A. 484; Anderson v. U. S., 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300; Cincinnati Packet Co. v. Bay, 200 U. S. 179, 26 Sup. Ct. 208, 50 L. Ed. 428; Chicago, etc., R. Co. v. Pullman, etc., Car Co., 139 U. S. 79, 11 Sup. Ct. 490, 35 L. Ed. 97; U. S. Consol. S. R. Co. v. Griffin Skelly Co., 126 Fed. 370, 61 C. C. A. 334; Standard Oil Co. v. U. S., 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, 25 Ann. Cas. 734, with extended note; U. S. v. Du Pont de Nemours (C. C.) 188 Fed. 127; Bigelow v. Mining Co., 167 Fed. 721, 94 C. C. A. 13; Trenton Pot. Co. v. Oliphant, 58 N. J. Eq. 507, 43 Atl. 723, 46 L. R. A. 255, 78 Am. St. Rep. 612; Lanyon v. Garden, etc., Sand Co., 223 Ill. 616, 79 N. E. 313, 9 L. R. A. (N. S.) 446; Whitwell v. Continental Tob. Co., 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689; Harbison-Walker Refractories Co. v. Stanton, 227 Pa. 55, 75 Atl. 988; Wood v. Seattle, 23 Wash. 1, 62 Pac. 135, 52 L. R. A. 369; Fonotipa, Ltd., v. Bradley (C. C.), 179 Fed. 959; Phillips v. Iola Cement Co., 125 Fed. 593, 61 C. C. A. 19; Hopkins v. U. S., 171 U. S. 578, 19 Sup. Ct. 40, 43 L. Ed. 290; Davis v. A. Booth & Co., 131 Fed. 31, 65 C. C. A. 269; Whitwell v. Con. Tob. Co., 125 Fed. 454, 458, 60 C. C. A. 290, 64 L. R. A. 689; Loewe v. Lawlor (C. C.) 148 Fed. 924; Pocahontas Co. v. Powhatan Co., 60 W. Va. 508, 56 S. E. 264, 10 L. R. A. (N. S.) 268, 116 Am. St. Rep. 901, 9 Ann. Cas. 667; Slaughter v. Thacker Coal Co., 55 W. Va. 642, 47 S. E. 247, 65 L. R. A. 342, 104 Am. St. Rep. 1013, 2 Ann. Cas. 335; Texas Co. v. Central Fuel Oil Co., 194 Fed. 1, 114 Fed. 21; Curtis Bros. Co. v. Catts, 72 N. J. Eq. 831, 66 Atl. 935; Gloucester Isinglass & Glue Co. v. Russia Cement Co., 154 Mass. 92, 27 N. E. 1005, 12 L. R. A. 563, 26 Am. St. Rep. 214; Equitable Gas Light Co. v. Baltimore Coal Tar & Mfg. Co., 63 Md. 285; Ridenbaugh v. Thayer, 10 Idaho, 662, 80 Pac. 229.

Defendants rely upon the following authorities: Cravens v. Carter-Crume Co., 92 Fed. 479, 34 C. C. A. 479; Finck v. Schneider Granite Co., 187 Mo. 244, 86 S. W. 213, 106 Am. St. Rep. 452; Citizens' L. H. & P. Co. v. Montgomery L. & W. P. Co. (C. C.) 171 Fed. 553; Stewart v. Stearns & Culver Lbr. Co., 56 Fla. 570, 48 South. 19, 24 L. R. A. (N. S.) 649; Pacific Factor Co. v. Adler, 90 Cal. 110, 27 Pac. 36,

25 Am. St. Rep. 102; U. S. v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; Chesapeake & Fuel Co. v. U. S., 115 Fed. 610, 53 C. C. A. 256; Santa Clara Valley Mill & Lbr. Co. v. Hayes, 76 Cal. 387, 18 Pac. 391, 9 Am. St. Rep. 214; S. J. Tribolet v. U. S., 11 Ariz. 436, 95 Pac. 85, 16 L. R. A. (N. S.) 223; Ellis v. Inman P. & Co., 131 Fed. 182, 65 C. C. A. 488; U. S. v. Jellico Mt. Coal & Coke Co. (C. C.) 46 Fed. 432, 12 L. R. A. 753; Montague & Co. v. Lowry, 193 U. S. 38, 24 Sup. Ct. 307, 48 L. Ed. 608; U. S. v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; Wheeler-Stenzel Co. v. Nat. Window Glass Jobber's Ass'n, 152 Fed. 864, 81 C. C. A. 658, 10 L. R. A. (N. S.) 972; Pingrey, Extraordinary Indus. & Interstate Contracts, §§ 320, 321, 330, 331; 20 Am. & Eng. Enc. (2d Ed.) 856–857; Rutland Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 19 L. Ed. 955; Elec. L. Co. v. Mobile & S. H. R. Co., 109 Ala. 190, 19 South. 721, 55 Am. St. Rep. 927; Starnes v. Newsom, 1 Tenn. Ch. 239; Bomer Bros. v. Canaday, 79 Miss. 222, 30 South. 638, 55 L. R. A. 328, 89 Am. St. Rep. 593; Gen. Elec. Co. v. Westinghouse, etc., Co. (C. C.) 144 Fed. 458; Berliner Gramophone Co. v. Seaman, 110 Fed. 30, 49 C. C. A. 99; Grape Creek Coal Co. v. Spellman, 39 Ill. App. 630; Marks v. Gates, 2 Alaska, 527; Stanton v. Singleton, 126 Cal. 657, 59 Pac. 146, 47 L. R. A. 334; Lone Star Salt Co. v. Texas S. L. R. Co., 99 Tex. 434, 90 S. W. 863, 3 L. R. A. (N. S.) 829; Taussig v. Corbin, 142 Fed. 660, 73 C. C. A. 656; 2 High on Injunctions (4th Ed.) p. 10961, par. 1109.

[1] The first question to be determined is whether complainant has established a right to relief in a court of equity. The description of the land in the contracts is so uncertain that, ordinarily, specific performance would not be decreed. 36 Cyc. 592. In these cases that obstacle has been removed, as the answers disclose by particular description a portion, at least, of the lands contemplated. There are allegations in the answers in aid of equity jurisdiction. These allegations are made to establish the defense that the contracts are in restraint of trade, but the parties will not be able, by their allegations or admissions to confer jurisdiction upon a court, over a subject-matter not warranted.

Specific performance will not be decreed in these causes by reason of the character of the obligations and the exacting and continuous supervision of the court which would be necessary to enforce its decree. Such supervision on the part of the court would be required to determine whether the oysters tendered by defendants to complainant were up to the "requirements" of the contract; whether they ran eight quarts to the bushel; if over, how much over, and, if complainant alleged defendants were selling to others, to ascertain whether or not they were, in fact, selling from the lands described, or oysters above or below the grade *required by the contract.*

Further, it is a matter of common knowledge that, in the native oyster trade, the oysters are disposed of by the sack in the shell. The contracts in question contemplate this. The court's supervision would be required in order to determine, by sample or otherwise, whether the oysters tendered would "open up" eight quarts to the sack.

Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 19 L. Ed. 955; 36 Cyc. 576, 587.

The holding in the case of Texas Co. v. Central Fuel Oil Co., 194 Fed. 1, 114 C. C. A. 21, is not opposed to the conclusion reached. That decision was on demurrer. All the allegations were conceded. A simple contract for taking 700,000 barrels of crude oil was involved. The suit disclosed special equities in that the defendant was insolvent, and that complainant had gone to great expense in building pipe lines to the oil wells of the defendant, which pipe lines would be worthless unless specific performance was decreed. Such equities do not appear in the present cases.

The equities urged in these cases, as warranting a decree for specific performance, are that the oysters raised in the particular locality in which these lands are situated have a peculiar flavor, and other characteristics which make them a distinct article of commerce, not obtainable elsewhere. It may be that they differ slightly in certain characteristics from other native oysters of the Pacific Coast. There is no evidence of any broken contracts because of the tendering of oysters grown elsewhere in the state, in lieu of oysters from Willapa Harbor, where these lands are situated. There is no difference, working such a prejudice as to require a decree of specific performance to protect complainant in its substantial rights; nor such that damages would not afford ample relief.

Specific performance has in many cases been decreed where corporate stock, the market value of which could not be determined, was the subject of contracts. 36 Cyc. 560, 567. But the bills in these cases set out that the market price of oysters, such as those raised on the lands in question, was, at the time the contracts were made, $2.75, and, at the time the suits were brought, $5 per sack.

Complainant alleges that there has been damage sustained in excess of $2,000 in each case, and it is therefore apparent that an action at law is adequate for any past breach of the contracts. There is no ground to apprehend that it will be more difficult in the future to determine the market value of those oysters than in the past.

It is further urged that, if complainant is relegated to its remedy at law, it will require a multiplicity of suits. Section 723 of the Revised Statutes (volume 4, Fed. Stat. Ann., p. 530 [U. S. Comp. St. 1901, p. 583]) which section was substantially re-enacted in section 267 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1163 [U. S. Comp. St. Supp. 1911, p. 237]) provides:

"Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law."

To warrant the interposition of a court of equity, the remedy afforded by it must be more adequate, or more complete than that at law.

The contracts involved in these suits have 16 years yet to run, and give complainant the right to purchase oysters produced by defendants on said lands. If it was probable that any decree that could be framed in these cases would leave no chance for future honest disagreement between the parties over what constituted a compliance, and if the

decree could be enforced once for all time, it might plausibly be con-
tended that the remedy in equity was more complete than that at law,
and that a multiplicity of suits would be avoided.   But, as above
pointed out, it is clear that constant supervision of the court would be
required over the full period covered by the contracts.   The court's
power would, if equity assumed jurisdiction, nominally be exercised in
the present suit, yet, so far as the completeness and adequacy of the
remedy is concerned, the several proceedings, resulting in the present
cases, would, in all probability, be as numerous and burdensome as
separate suits at law.   The foregoing would be true, even if it were
conceded that suits at law, at recurrent intervals, will be required,
which concession is not necessary.

[2] Upon the hearing, the court was asked by complainant, in the
event that it should find that the complainant was not entitled to spe-
cific performance, to assess its damages.   This will not be done, for
to do so, after the conclusion reached, would be to refuse jurisdiction
in equity and exercise it in the same case.

The case of Cartwright v. Southern Pacific Co., 206 Fed. 234, re-
cently decided by the United States District Court in Oregon, is not an
authority to the contrary.   That was a case to enjoin the defendant
from maintaining certain dikes in the Willamette river, which changed
the channel of the stream, throwing the current against complainant's
land.   The court found that a decree requiring the abatement of the
obstacle would be no benefit to the plaintiff, but a substantial injury
to the defendant, and therefore, while finding for the complainant,
denied the injunctive relief prayed, stating:

"The only question in the case, therefore, is one of damages.   I have been
in doubt whether, under the circumstances stated, the plaintiff's remedy is at
law or in equity, and whether the court should proceed to assess the damages
or transfer the cause to the law side of the court, as provided in equity rule
22, * * * but have concluded that, inasmuch as the jurisdiction of a court
of equity was properly invoked to compel the removal of the dykes or dams,
if the facts warrant (Morton v. Oregon Short Line, 48 Or. 444 [87 Pac. 151,
1046, 7 L. R. A. (N. S.) 344, 120 Am. St. Rep. 827]), it will retain this suit for
the adjudication of the entire matter in controversy, although it may not be
able to grant the entire relief demanded (U. S. v. Bernard, 202 Fed. 728 [121
C. C. A. 190])."

The court expressly found that the jurisdiction of a court of equity
had been properly invoked to compel the removal of the dikes.

The causes will be transferred to the law side of the court.